| | | |
|---|---|---|
| **DWAYNE ALEXANDER** | * | **NO. 2023-CA-0159** |
| **VERSUS** | * | |
| | | **COURT OF APPEAL** |
| **LOUISIANA STATE BOARD** | * | |
| **OF PRIVATE INVESTIGATOR** | | **FOURTH CIRCUIT** |
| **EXAMINERS, PHYLLIS** | * | |
| **GLAZER, JAMES P.** | | **STATE OF LOUISIANA** |
| **ENGLADE, LANCE** | * * * * * * * | |
| **WALLACE, ANNETTE** | | |
| **KOVAC, AND MEEKS AND** | | |
| **ASSOCIATES, LLC** | | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2019-00711, DIVISION "B"
Honorable Richard G. Perque, Judge Pro Tempore
* * * * * *
**Judge Dale N. Atkins**
* * * * * *

(Court composed of Judge Sandra Cabrina Jenkins, Judge Dale N. Atkins, Judge Rachael D. Johnson)

Dwayne Alexander
1515 South Salcedo Street
P.O. Box 791407
New Orleans, LA 70179

    PLAINTIFF/APPELLANT

Jeff Landry, Attorney General
Davis B. Allgood, Special Assistant Attorney General
DAVIS B. ALLGOOD, ATTORNEY AT LAW
21950 Hoo Shoo Too Rd
Baton Rouge, LA 70817

    COUNSEL FOR DEFENDANT/APPELLEE, Louisiana State Board of Private Investigator Examiners

Jeff Landry, Attorney General
Dennis J. Phayer
BURGLASS, TANKERSLEY, GAUDIN, PHAYER
5213 Airline Drive
Metairie, LA 70001

    COUNSEL FOR DEFENDANTS/APPELLEES, James Englade and Lance Wallace

S. Daniel Meeks
Kristen E. Meeks
MEEKS & ASSOCIATES, L.L.C.
237 West Causeway Approach
Mandeville, LA 70448

COUNSEL FOR DEFENDANTS/APPEELEES, Phyllis E. Glazer and Meeks & Associates, L.L.C.


Jeff Landry, Attorney General
Deborah A. Villio, Special Assistant Attorney General
Michael L. Fantaci
James C. Raff
LEBLANC FANTACI VILLIO, LLC
3421 N. Causeway Blvd., Suite 201
Metairie, LA 70002


COUNSEL FOR DEFENDANT/APPELLEE, Annette Kovac


**AFFIRMED IN PART; REVERSED IN PART; JUDGMENT AMENDED IN PART AND AFFIRMED AS AMENDED; REMANDED WITH INSTRUCTIONS**
**OCTOBER 25, 2024**

DNA

SCJ

RDJ


The case underlying this appeal involves allegations of fraud and defamation. Appellant, Dwayne Alexander ("Mr. Alexander"), seeks review of the trial court's November 2, 2022 judgment, which ruled on multiple exceptions and motions filed by the parties. In pertinent part, in that judgment, the trial court granted an exception of res judicata filed by some of the Appellees, the Louisiana Board of Private Investigator Examiners ("Board") and Phyllis Glazer ("Ms. Glazer") and Meeks & Associates, LLC ("Meeks").[1] On appeal, res judicata has been asserted by the other Appellees, Annette Kovac ("Ms. Kovac"), James Englade ("Mr. Englade"), and Lance Wallace ("Mr. Wallace") (collectively "Appellees"). For the following reasons, we:

- Affirm the sustaining of Appellees' Unauthorized Use of a Summary Proceeding;

---

[1] According to the record, in November 2015, Meeks hired Ms. Glazer. While Ms. Glazer was employed at Meeks, Mr. Alexander filed *Dwayne Alexander v. La. State Board of Private Investigator Examiners, et al.*, CDC No. 2018-2072, Div. "1-14" ("Case No. 2018-2072"), wherein he named the Board, Mr. Lance Wallace, Mr. James P. Englade, and Mr. Del Hahn, as defendants. Ms. Glazer was retained to represent the Board, Mr. Lance Wallace, Mr. James P. Englade, and Mr. Del Hahn in CDC Case No. 2018- 2072.

1

- Affirm the denial as moot of the exception of no cause of action filed by Mr. Englade and Mr. Wallace, Ms. Kovac, the Board, and Ms. Glazer and Meeks;

- Affirm the denial as moot of the exception of peremption filed by Mr. Englade and Mr. Wallace, Ms. Kovac, and Ms. Glazer and Meeks;

- Reverse the trial court's denial of the requests for attorney fees as found in Mr. Englade and Mr. Wallace's "Exceptions of Peremption, No Cause of Action, and Unauthorized Use of a Summary Proceeding and Request for Award of Attorney Fees;" in Ms. Kovac's "Exception of Peremption, Exception of No Cause of Action, Exception of Unauthorized Use of Summary Proceeding, and Motion for Attorney Fees in Response to Plaintiff's Motion for Annulment of Judgments on the Grounds of Fraud on the Court;" the Board's "Peremptory Exception . . . Pleading the Objections of No Cause of Action, Prescription, and Res Judicata, Combined with Dilatory Exception Pleading the Objection of Unauthorized Use of Summary Proceeding and with Motion for Attorney's Fees under [La. C.C.P.] art. 2004;" and Ms. Glazer and Meeks' "Motion to Adopt Defendants' Responses to Plaintiff's Motion for Annulment of Judgments on the Grounds of Fraud on the Court and Request for Costs and Attorney Fees;"

- Reverse the trial court's denial of Ms. Glazer and Meeks' request for costs as found in their "Motion to Adopt Defendants' Responses to Plaintiff's Motion for Annulment of Judgments on the Grounds of Fraud on the Court and Request for Costs and Attorney Fees;"

- Award costs to Mr. Englade and Mr. Wallace for their "Exceptions of Peremption, No Cause of Action, and Unauthorized Use of a Summary Proceeding and Request for Award of Attorney Fees;" to Ms. Kovac for her "Exception of Peremption, Exception of No Cause of Action, Exception of Unauthorized Use of Summary Proceeding, and Motion for Attorney Fees in Response to Plaintiff's Motion for Annulment of Judgments on the Grounds of Fraud on the Court;" and to the Board for its "Peremptory Exception . . . Pleading the Objections of No Cause of Action, Prescription, and Res Judicata, Combined with Dilatory Exception Pleading the Objection of Unauthorized Use of Summary Proceeding and with Motion for Attorney's Fees under [La. C.C.P.] art. 2004;"

- Remand this matter to the trial court for a determination of the amount of the trial court costs and attorney fees owed to Mr. Englade and Mr. Wallace, Ms. Kovac, the Board, and Ms. Glazer and Meeks for those respective exceptions and motion filed in response to Mr. Alexander's Motion for Annulment, specifically Mr. Englade and Mr. Wallace's "Exceptions of Peremption, No Cause of Action, and Unauthorized Use of a Summary Proceeding and Request for Award of Attorney

Fees;" Ms. Kovac's "Exception of Peremption, Exception of No Cause of Action, Exception of Unauthorized Use of Summary Proceeding, and Motion for Attorney Fees in Response to Plaintiff's Motion for Annulment of Judgments on the Grounds of Fraud on the Court;" the Board's "Peremptory Exception . . . Pleading the Objections of No Cause of Action, Prescription, and Res Judicata, Combined with Dilatory Exception Pleading the Objection of Unauthorized Use of Summary Proceeding and with Motion for Attorney's Fees under [La. C.C.P.] art. 2004;" and Ms. Glazer and Meeks' "Motion to Adopt Defendants' Responses to Plaintiff's Motion for Annulment of Judgments on the Grounds of Fraud on the Court and Request for Costs and Attorney Fees;"

- Affirm that Mr. Alexander's Motion for Annulment is moot pursuant to the granting of Appellees' Exception of Unauthorized Use of a Summary Proceeding;

- Affirm the sustaining of the Board's and Ms. Glazer and Meeks' exception of res judicata and apply res judicata to Mr. Alexaner's claims against Mr. Englade and Mr. Wallace and Ms. Kovac too;

- Affirm the dismissal with prejudice of Mr. Alexander's Petition for Absolute Nullity;

- Affirm the denial of Mr. Alexander's Motion to Disqualify;

- Affirm the finding that Mr. Englade and Mr. Wallace's, the Board's, and Ms. Glazer and Meeks' pleadings filed in response to Mr. Alexander's Motion to Disqualify were rendered moot by the denial of the Motion to Disqualify;

- Reverse the trial court's denial of Ms. Glazer and Meeks' request for costs and attorney fees associated with their opposition to Mr. Alexander's Motion to Disqualify;

- Award costs and attorney fees to Mr. Englade and Mr. Wallace and the Board for their oppositions to Mr. Alexander's Motion to Disqualify;

- Remand to the trial court for a determination of the costs and attorney fee's owed to Ms. Glazer and Meeks, Mr. Englade and Mr. Wallace, and the Board for their oppositions to Mr. Alexander's Motion to Disqualify;

- Reverse the denial of Mr. Englade and Mr. Wallace's Re-urged Motion to Tax Costs;

- Remand for a determination as to how much Mr. Englade and Mr. Wallace are owed in light of our decision to grant their Re-urged Motion to Tax Costs;

- Affirm the grant of Ms. Kovac's Motion to Tax Costs and award of $75.00 for same;

- Affirm the grant of the Board's Motion to Tax Costs and award of $525 for same;

- Grant all Appellees' requests for frivolous appeal damages as requested in their Answers to Mr. Alexander's appeal;

- Amend the November 2, 2022 judgment to show Ms. Glazer and Meeks did not have a pending motion to tax costs at the time of the October 27, 2022 hearing;

- Remand for the opportunity for Ms. Glazer and Meeks to file the appropriate motion to tax costs and rule to show cause per La. C.C.P. art. 1920;

- Deny Ms. Glazer and Meeks' request to amend the judgment to state that they did not have a pending motion for sanctions;

- Reverse the denial of Ms. Glazer and Meeks' Motion for Sanctions;

- Remand for the trial court to determine the amount owed to Ms. Glazer and Meeks in conjunction with their Motion for Sanctions under La. C.C.P .art. 863;

- Affirm the award of $500 to the Board for the Special Motion to Strike in addition to the award of $1500 previously granted by the trial court;

- Grant the Board's request for an additional award under La. C.C.P. art. 971 in the amount of $500;

- Instruct the trial court to fulfill its duty to assess and scrutinize Mr. Alexander's *in forma pauperis* status;

- Instruct the trial court to enforce the *in forma pauperis* code articles and rules by requesting that the Clerk of Court for Orleans Parish Civil District Court provides an affidavit of account for the costs and fees Mr. Alexander owes and records this information in the mortgage records; and

- Instruct the Clerk of this Court to provide an affidavit of account for the costs and fees Mr. Alexander owes for this appeal and his 2019 Appeal and instruct our Clerk to record this information in the mortgage records.

**RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The protracted dispute underlying this present appeal has been before this Court numerous times on both appeals and writ applications. In one of Mr. Alexander's prior appeals, docketed with this Court as 2015-CA-0537, 0708 *Dwayne G. Alexander v. Louisiana State Board of Private Investigator Examiners, et al.* ("2015 Appeal"), the Court summarized the relevant factual and procedural background up to that point as follows:

> In November, 1997, Mr. Alexander obtained a license to practice as a private investigator from the Board. Until November 2006, he held a valid private investigator license. When he was licensed, Mr. Alexander was subject to the rules and regulations governing the practice of private investigators, as promulgated and enforced by the Board and set forth in La. R.S. 37:3501 et seq. ("the P.I. Statutes").
>
> Soon after obtaining his license, Mr. Alexander formed his own private investigator company, World Wide Detective Agency, Inc. ("World Wide"); and he employed other investigators to work for him. In 2000, Mr. Alexander began performing contract work for the City of New Orleans (the "City"), investigating worker's compensation claims. In 2006, Mr. Alexander entered into a contract with the City's third party claims administrator, Cannon Cochran Management Services, Inc. ("CCMSI"), to become their Disadvantage[d] Business Enterprise ("DBE") partner. From 2006 to February 2009, Mr. Alexander continued to investigate worker's compensation claims for the City under his DBE contract with CCMSI. In November 2006, Mr. Alexander decided not to renew his private investigator license and allowed his license to expire. *See* La. R.S. 37:3517. According to Mr. Alexander, his work for the City under the DBE contract with CCMSI did not require him to be licensed as a private investigator given the exemptions enumerated in La. R.S. 37:3503(8)(b)(i), (iv), and (viii).
>
> Before his license expired in 2006, Mr. Alexander received two notices from the Board that complaints had been filed against him. Both complaints—the Phenix and Caesar complaints—involved allegations of professional misconduct against Mr. Alexander. The Board opened investigations into the two complaints, and Mr.

5

Alexander was provided the opportunity to respond to the complaints. As of November 14, 2006, the date Mr. Alexander's license expired, the Board's investigation of the complaints was not completed. On December 6, 2006, the Board sent a letter to Mr. Alexander informing him that the two complaints filed against him had not been resolved as of the date that his license expired and that his license would not be renewed until a hearing was held with the Board's investigatory officer. The letter further informed Mr. Alexander of the possibility that he "may have violated state criminal law during one of those investigations" and that the matter would be turned over to the State Police for investigation.

On February 16, 2009, the Board received a complaint letter and a large binder ("the Centanni Binder") from a private investigator, Wayne Centanni. In the letter, Mr. Centanni complained that Mr. Alexander had been conducting private investigation work with CCMSI for the City without holding a valid license; and Mr. Centanni requested that the Board conduct a full investigation into Mr. Alexander and his business dealings. The Centanni Binder contained a background investigation of Mr. Alexander and his private investigator company, which consisted of a large volume of personal and professional information that Mr. Centanni had compiled from various sources. The Centanni Binder also included records obtained from the Board through a public records request filed by Mr. Centanni on February 12, 2009. The Board's records disclosed information about Mr. Alexander's license and his expunged criminal convictions, all of which Mr. Centanni included in the Centanni Binder.

Mr. Centanni sent copies of the letter and the Centanni Binder to CCMSI, the City Attorney's Office, the Metropolitan Crime Commission ("MCC"), Lee Zurik at WWL-TV, and several others. Upon receiving the Centanni Binder, CCMSI contacted Mr. Alexander and held a meeting with him. At the meeting, Mr. Alexander [was] informed of the Centanni Binder and its contents. Subsequently, in February 2009, Mr. Alexander's DBE contract with CCMSI and the City was terminated.

On February 27, 2009, the Board issued a cease and desist order directed to Mr. Alexander, which stated as follows:

> Pursuant to the authority of La. R.S. 37:3522, the Louisiana State Board of Private Investigator Examiners orders that Dwayne Alexander, who the Board finds to be engaged in the practice of private investigation in the State of Louisiana in violation of La. R.S. 37:3500 et seq., be and is hereby ordered to cease and desist from such activity.

Annette Kovac, the Board's Chairman, signed the cease and desist order. On March 4, 2009, the Board's Executive Director, Mr. Englade, hand-delivered the cease and desist order to Mr. Alexander.

On May 12, 2009, Mr. Alexander sent two letters to the Board complaining that its actions—disclosing personal, confidential records to Mr. Centanni and issuing the cease and desist order without a hearing—resulted in the loss of his contract with CCMSI and the City. Mr. Alexander also filed a formal complaint with the Board against Mr. Centanni and submitted a public records request for the documents the Board furnished to Mr. Centanni.

In July 2009, Mr. Alexander filed suit against Mr. Centanni in Orleans Parish Civil District Court ("CDC") alleging unfair trade practices. Mr. Alexander also filed suit against CCMSI in [the] United States District Court for the Eastern District of Louisiana alleging wrongful termination. Within a year of the lawsuits being filed, both were dismissed.

In January 2011, Mr. Alexander worked a contract job investigating a worker's compensation claim for the St. Charles Parish School Board (the "School Board"). In May 2011, the MCC contacted the St. Charles Parish School Board Superintendent (the "Superintendent") after receiving an anonymous tip that Mr. Alexander was conducting private investigations in St. Charles Parish without a valid license. The MCC informed the Superintendent that Mr. Alexander lacked a valid license to perform private investigator work and that, on February 27, 2009, he was issued a cease and desist order. The MCC also provided information about Mr. Alexander's criminal background. Based on the information provided by the MCC, the Superintendent contacted the St. Charles Parish Sheriff's Office and requested that an investigation be conducted into whether Mr. Alexander had a valid private investigator license at the time he performed work for the School Board.

In the course of his investigation, Captain Donald Smith of the St. Charles Parish Sheriff's Office contacted the Board by email and explained the nature of his investigation. Captain Smith requested that the Board provide documentation as to whether Mr. Alexander held a valid private investigator license in January 2011. He also requested that the Board provide the relevant state statutes setting forth the penalty for conducting private investigations without a valid private investigator license. In response to his inquiry, Captain Smith received a phone call from Mr. Englade. Mr. Englade informed Captain Smith that the Board had served Mr. Alexander with the cease and desist order in March 2009 and that order was still in effect. Mr. Englade further informed Captain Smith that if, in fact, Mr. Alexander had conducted private investigations in St. Charles Parish in 2011, he would be in violation of the P.I. Statutes. After that discussion, the

Board faxed to Captain Smith a copy of the cease and desist order, the table of contents for the P.I. Statutes (La. R.S. 37:3500-25), and the statute providing the penalties for violating the P.I. Statutes (La. R.S. 37:3521). Based on his investigation, Captain Smith completed an arrest warrant affidavit, charging Mr. Alexander with a violation of La. R.S. 37:35206 by providing contract or private investigator services to the Board without possessing a valid license. On June 23, 2011, an arrest warrant for Mr. Alexander was signed and issued by the Twenty-Ninth Judicial District Court in St. Charles Parish ("29th JDC").

In October 2011, Mr. Alexander discovered the outstanding arrest warrant for him in St. Charles Parish. Upon discovering the arrest warrant, he turned himself in to the police. At the time of his arrest (on October 24, 2011), Mr. Alexander learned that he was being charged with conducting private investigation without a valid private investigator license. On the next day, October 25, 2011, the Times-Picayune newspaper reported on Mr. Alexander's arrest as a result of the investigation by the St. Charles Parish Sheriff's Office into his work for the School Board in January 2011.

On December 19, 2012, [a] 29th JDC judge ordered the State to produce to Mr. Alexander the State's evidence file in the criminal case against him on the charge of violating La. R.S. 37:3520.

On January 14, 2013, Mr. Alexander filed . . . suit against the [Board and Mr. Englade, in his individual capacity and in his official capacity as Executive Director of the Board]. [Mr.] Alexander averred in his petition that the Board and Mr. Englade, individually and in his official capacity, violated his constitutional rights and defamed him by issuing the cease and desist order in 2009. He also averred that the Defendants violated state public records laws and Board[] regulations by disclosing his expunged criminal records. Finally, he averred that the Defendants' defamatory and tortious conduct against him was continuing and undiscoverable from 2009 until December 19, 2012, when he received the State's evidence in the criminal case against him in the 29th JDC.

On March 5, 2013, the Defendants filed multiple exceptions, including no cause of action, prescription, and improper venue. Following a hearing on the exceptions, the trial court granted the Defendants' exception of no cause of action and allowed Mr. Alexander twenty days to amend his petition to state a cause of action. The trial court also granted the Defendants' exception of improper venue as to Mr. Alexander's claims under the Public Records Act. The trial court denied the Defendants' exception of prescription.

On May 31, 2013, Mr. Alexander filed a first supplemental and amended petition. In his amended petition, Mr. Alexander enumerated

the following five causes of action: (1) slander and defamation (2006-2013); (2) defamation and slander (2011-2013); (3) continuing defamation and slander per se; (4) damages for violation of state law affecting petitioner; and (5) breach of duty to investigate and disseminate truthful information.

On July 29, 2013, the Defendants filed a second set of exceptions, a motion for sanctions and attorney's fees, and a motion to strike pursuant to La. C.C.P. art. 971. On September 20, 2013, these matters were heard by the trial court. In its October 16, 2013 judgment, the trial court overruled the Defendants' exceptions of no cause of action and prescription and denied their motion to strike and motion for sanctions.

On December 10, 2013, the Defendants filed an answer and a reconventional demand. In their answer, the Defendants asserted multiple affirmative defenses, including discretionary immunity and quasi-judicial immunity. In their reconventional demand, the Defendants asserted a claim of abuse of process against Mr. Alexander.

On September 18, 2014, Mr. Alexander filed a motion for partial summary judgment on the issue of whether he was exempt from the P.I. Statutes, pursuant to La. R.S. 37:3503, while working under his DBE contract with the City from 2006 to 2009 and while working for the St. Charles Parish School Board in 2011. On October 8, 201[4], the trial court denied Mr. Alexander's motion for partial summary judgment.

On November 3, 2014, the Defendants filed a motion for summary judgment seeking dismissal of Mr. Alexander's claims and a judgment against Mr. Alexander on their reconventional claim of abuse of process. In their summary judgment motion, the Defendants also re-urged their exception of prescription and asserted quasi-judicial immunity and conditional privilege as a bar to Mr. Alexander's claims against them. At the November 14, 2014 hearing, the trial court overruled the exception of prescription, finding no reason to revisit the issue, and denied the motion for summary judgment, finding there were issues of material fact appropriate for a jury to resolve.

In December 2014, a jury trial was held in this matter. At the close of Mr. Alexander's evidence and before the submission of the case to the jury, the Defendants moved for a directed verdict and dismissal of Mr. Alexander's claims based on prescription. After brief argument, the trial court found "sufficient evidence of an interruption of prescription" and denied the Defendants' motion for directed verdict. On the following day, the trial court instructed the jury on the applicable law and submitted a general verdict form with multiple jury

interrogatories to the jury. The jury instructions and interrogatories set forth the following four causes of action against the Defendants for the jury to decide: (1) defamation; (2) abuse of process; (3) intentional infliction of emotional distress; (4) violation of a constitutional right under color of law. Neither Mr. Alexander nor the Defendants raised any objection to the jury instructions or jury interrogatories presented to the jury.

On December 18, 2014, the jury returned its verdict. The jury found the Defendants not liable on two of the four claims—intentional infliction of emotional distress and violation of Mr. Alexander's constitutionally protected rights. The jury found the Defendants liable to Mr. Alexander for the other two claims—defamation and abuse of process—and awarded a total of $300,000 in damages. On January 5, 2015, the trial court entered judgment in accord with the jury's verdict. Both the Defendants and Mr. Alexander filed motions for new trial. On March 10, 2015, the trial court denied both motions.

On January 30, 2015, Mr. Alexander filed a petition to annul the jury verdict based on fraud and ill practice under La. C.C.P. art. 2004. In his petition to annul, Mr. Alexander alleged that the jury verdict resulted from perjured testimony and fabricated evidence presented by the Defendants at trial. In response, the Defendants filed a motion for summary judgment, arguing that Mr. Alexander's allegations of misconduct should have been raised in a motion for mistrial. On May 8, 2015, the trial court granted the Defendants' motion for summary judgment and dismissed with prejudice Mr. Alexander's petition to annul the jury verdict.

*Alexander v. La. State Bd. of Private Investigator Exam'rs*, 2015-0537, 0708, pp. 2-12 (La. App. 4 Cir. 2/17/17), 211 So.3d 544, 549-54, *writ denied*, 2017-0571 (La. 5/26/17), 221 So.3d 855, and *writ denied*, 2017-0607 (La. 5/26/17), 221 So.3d 857. In Mr. Alexander's 2015 Appeal, this Court held that Mr. Alexander's claims based on pre-2011 actions and his abuse of process claims were prescribed. *Id.* at p. 48, 211 So.3d at 573. This Court affirmed the remainder of the trial court's judgment. *Id.*

After this Court rendered its Opinion in Mr. Alexander's 2015 Appeal, on January 22, 2019, Mr. Alexander instituted a new lawsuit by filing a "Petition for Fraud and Defamation" ("Petition for Fraud") in Civil District Court for the Parish

of Orleans. The trial court docketed this suit under case number 2019-0711 ("CDC Case No. 2019-711"). Therein, Mr. Alexander named as defendants Ms. Glazer, individually and in her capacity representing the Board; Mr. Englade, individually and in his capacity as Executive Director of the Board; Ms. Kovac, individually and in her capacity as a member of the Board; Mr. Wallace, individually and in his capacity as a member of the Board; the Board; and Meeks. In his Petition for Fraud, Mr. Alexander "alleg[ed] that the Defendants conspired to defame him by 'circulating a false Cease and Desist Order' and fraudulently inducing him to settle claims in a pending lawsuit [CDC Case No. 2018-2072] tangentially related to the factual scenario summarized above." *Alexander v. La. State Bd. of Private Investigator Exam'rs*, 2019-0778, p. 9 (La. App. 4 Cir. 4/1/20), 293 So.3d 1243, 1250 (footnote omitted). Mr. Alexander contended that the defendants defamed him and violated his constitutional rights by fabricating and circulating a false cease and desist order, thereby ruining his business and career. In particular, Mr. Alexander contended that Ms. Glazer, Mr. Englade, and Mr. Wallace knew that the cease and desist order was false and invalid, such that attaching it to pleadings and referring to it in open court constituted defamation on their part. Further, Mr. Alexander asserted that Ms. Glazer, Mr. Englade, and Mr. Wallace had fraudulently induced him into engaging in settlement negotiations when they had no intention or authority to settle. After the parties filed various pleadings, the trial court rendered judgment on May 22, 2019.

Ultimately, this led to another appeal by Mr. Alexander to this Court, which was lodged as 2019-CA-0778 *Dwayne Alexander v. Louisiana State Board of Private Investigator Examiners, Phyllis Glazer, James P. Englade, Lance Wallace,*

11

*Annette Kovac, and Meeks and Associates* ("2019 Appeal"), wherein the Court

explained the updated procedural history as follows:

> Ms. Kovac filed an exception of No Cause of Action. Attorney Glazer and Meeks filed a Motion for Sanctions and Injunctive Relief as well as Exceptions of Prematurity, Lis Pendens, and Improper Venue. Mr. Englade and Mr. Wallace filed Exceptions of No Cause of Action, Prematurity, and Vagueness. Likewise, [the Board] filed Exceptions of No Cause of Action, Prematurity, and Vagueness. [The Board] also filed a Special Motion to Strike pursuant to La. C.C.P. art. 971.

> Mr. Alexander then filed a First Supplemental and Amending Petition adding Davis Allgood, as attorney for [the Board], as a defendant. Mr. Alexander attempted to file the First Supplemental and Amending Petition ex parte. Most of the defendants objected. Contending a conflict of interest prevented Attorney Glazer and Meeks from serving as counsel, Mr. Alexander filed a Motion to Disqualify them. Mr. Alexander filed a Motion for Insufficiency of Service of Process of the Defendants' Exceptions and Motion to Strike.

> Following these numerous filings, the trial court conducted a thorough hearing and issued a judgment containing the following rulings:

> 1) The peremptory exceptions filed by [the Board] and Ms. Kovac, as well as the dilatory exceptions filed by Mr. Englade, Mr. Wallace, Attorney Glazer, and Meeks are sustained due to the pendency of case 2018-2072 in the trial court;

> 2) All remaining exceptions are overruled as moot;

> 3) Motion for Sanctions filed by Attorney Glazer and Meeks is denied without prejudice;

> 4) Motion to Transfer is denied;

> 5) Motion to Disqualify Attorney Glazer and Meeks is denied;

> 6) Mr. Alexander's Exception of Insufficiency of Service of Process is denied;

> 7) [The Board]'s Special 971 Motion to Strike is granted;

12

> 8)    Mr. Alexander is ordered to pay [the Board] $1,500 for attorney's fees; and
>
> 9)    Mr. Alexander's claims are dismissed without prejudice.
>
> Mr. Alexander's notice of appeal followed.
>
> Attorney Glazer and Meeks filed an Answer to Mr. Alexander's appeal seeking reversal of the trial court's denial of sanctions pursuant to La. C.C.P. art. 863, an injunction preventing Mr. Alexander from filing further suits, attorney's fees and costs, and damages for a frivolous appeal. Mr. Englade and Mr. Wallace also filed an Answer requesting damages and costs for defending a frivolous appeal. [The Board] filed an Answer seeking an increase in the attorney's fees award[ed] by the trial court pursuant to La. C.C.P. art. 971 based on defending the appeal, as well as attorney's fees and costs for the frivolous appeal.

*Alexander*, 2019-0778, pp. 9-10, 293 So.3d at 1250-51 (footnote omitted).

Discussing one of the arguments in Mr. Alexander's brief in his 2019 Appeal, this Court explained that "Mr. Alexander frames the central issue in his self-authored appellant brief as follows: 'The trial court committed legal error when it failed to consider that the under lying [sic] case . . . had decided the issue of the cease and desist order's falsity, permitting the instant defamation action.'" *Id.* at p. 11, 293 So.3d at 1251-52. As this Court further explained, Mr. Alexander was "essentially questioning the legality of the trial court's granting the exception of prematurity." *Id.* at p. 11, 293 So.3d at 1252. This Court found that because "Mr. Alexander's claims of alleged defamation arose within the context of [CDC Case No. 2018-2072] currently pending before the trial court" then "the judicial proceeding giving rise to Mr. Alexander's allegations of defamation ha[d] not yet concluded." *Id.* at p. 12, 293 So.3d at 1253. Accordingly, this Court concluded that the trial court did not err by granting the Exception of Prematurity and dismissing Mr. Alexander's suit. *Id.*

Discussing another argument in Mr. Alexander's brief in his 2019 Appeal, this Court explained that "Mr. Alexander contends that the trial court erred by granting [the Board]'s Special Motion to Strike pursuant to La. C.C.P. art. 971 because there was no service of the motion and the statute does not apply." *Id.* at p. 13, 293 So.3d at 1252-53. More particularly, "Mr. Alexander states that while there is a signed return on the motion in the record, the signature does not match his own. He contends that a person identified as A Dwuane signed the return." *Id.* at p. 13, 293 So.3d at 1253 (internal quotation marks omitted). The Court then quoted the relevant portion of La. C.C.P. art. 1313, which states:

> A. Except as otherwise provided by law, every pleading subsequent to the original petition, and every pleading which under an express provision of law may be served as provided in this Article, may be served either by the sheriff or by:
>
> (1) Mailing a copy thereof to the counsel of record, or if there is no counsel of record, to the adverse party at his last known address, this service being complete upon mailing.
>
> . . . .
>
> C. Notwithstanding Paragraph A of this Article, if a pleading or order sets a court date, then service shall be made either by registered or certified mail or as provided in Article 1314, or by actual delivery by a commercial courier.

This Court held that because the record contained a signed return on service of the Board's Special Motion to Strike, the record was dispositive on the issue of service, such that the trial court did not err by denying Mr. Alexander's Motion for Insufficiency of Service of Process as it related to the Special Motion to Strike. *Alexander*, 2019-0778, p. 13, 293 So.3d at 1253. Moreover, the Court noted that Mr. Alexander bore the burden of proving probability of success on his defamation claim to defeat the Board's Motion to Strike. *Id.* at p. 15, 293 So.3d at 1254. The Court concluded that because the trial court dismissed Mr. Alexander's claims

based on prematurity, this negated his probability of success on the Board's Motion to Strike, such that the trial court did not err in granting the Motion to Strike. *Id.*

In Mr. Alexander's 2019 Appeal, this Court also concluded that the trial court erred by denying a motion for sanctions filed by Ms. Glazer and Meeks. *Id.* at p. 19, 293 So.3d at 1256. The Court remanded the issue of sanctions to the trial court to conduct a hearing and assess sanctions if deemed appropriate. *Id.* Additionally, in deciding to award frivolous appeal damages to the defendants, the Court listed "similar and indirectly related lawsuits filed at First City Court and the Orleans Parish Civil District Court" and quoted an order and a warning regarding frivolous and repetitive litigation issued to Mr. Alexander by the United States District Court for the Eastern District of Louisiana and the United States Fifth Circuit Court of Appeal, respectively. *Id.* at pp. 21-24, 293 So.3d at 1257-59.

In sum, in this Court's Opinion in Mr. Alexander's 2019 Appeal, this Court affirmed in part, reversed in part, and remanded. Specifically, this Court affirmed the trial court's decision to sustain the exception of prematurity because Mr. Alexander's claims of defamation could not be brought until the underlying suit concluded. The Court further affirmed the trial court's grant of the Board's Special Motion to Strike because Mr. Alexander was properly served and La. C.C.P. art. 971 was designed for this type of suit. The Court determined that the Board was entitled to an increase in sanctions under La. C.C.P. art. 971 and remanded the matter to the trial court for that determination. Additionally, the Court found that the trial court erred by not addressing Ms. Glazer and Meeks' Motion for Sanctions pursuant to La. C.C.P. art. 863 and remanded this issue to the trial court for a determination on the motion. Finally, the Court found that Mr. Alexander's appeal

15

was frivolous and awarded damages, attorney fees, and costs consistent with the Opinion. Mr. Alexander filed a writ application with the Louisiana Supreme Court regarding this Court's Opinion, and the Louisiana Supreme Court denied his writ application on November 10, 2020. *Alexander v. La. State Bd. of Priv. Investigator Exam'rs*, 2020-01072 (La. 11/10/20), 303 So.3d 1039.

After this Court rendered its Opinion in his 2019 Appeal and the Louisiana Supreme Court denied his writ application, on January 28, 2021, Mr. Alexander filed a "Motion for Annulment of Judgments on the Grounds of Fraud and Fraud on the Court" ("Motion for Annulment") in CDC Case No. 2019-711, i.e., the same trial court case number that led to his 2019 Appeal to this Court. In his Motion for Annulment, Mr. Alexander contended that the trial court's May 22, 2019 judgment should be set aside as "it was based on fraud on the [c]ourt, and fraud and ill practice under [La.] C.C.P. art. 2002" because the defense attorneys "present[ed] perjured[] testimony [and] false documents," while "fabricating evidence" and "misrepresent[ing] facts to the [c]ourt." His arguments largely centered on service of process in the prior proceedings, whereby Mr. Alexander maintained "he was never served with process and proffered evidence in support of the fact" while the defendants "appallingly misrepresented effectuation of service of process without a scintilla of proof."

In response to Mr. Alexander's Motion for Annulment, on February 8, 2021, Mr. Englade and Mr. Wallace filed "Exceptions of Peremption, No Cause of Action, and Unauthorized Use of a Summary Proceeding and Request for Award of Attorney Fees." Also on February 8, 2021, Ms. Kovac filed an "Exception of Peremption, Exception of No Cause of Action, Exception of Unauthorized Use of Summary Proceeding, and Motion for Attorney Fees in Response to Plaintiff's

Motion for Annulment of Judgments on the Grounds of Fraud on the Court." Then, on February 11, 2021, the Board filed a "Peremptory Exception by Defendant Board Pleading the Objections of No Cause of Action, Prescription, and Res Judicata, Combined with Dilatory Exception Pleading the Objection of Unauthorized Use of Summary Proceeding and with Motion for Attorney's Fees under [La. C.C.P.] art. 2004." Also on February 11, 2021, Ms. Glazer and Meeks filed a "Motion to Adopt Defendants' Responses to Plaintiff's Motion for Annulment of Judgments on the Grounds of Fraud on the Court and Request for Costs and Attorney Fees." In pertinent part, in arguing the exception of unauthorized use of a summary proceeding, Appellees contended that Louisiana courts require an action for nullity based on fraud or ill practices to be brought in an ordinary proceeding rather than collaterally in a summary proceeding, such as Mr. Alexander's Motion for Annulment. That is, they argued that it was improper for Mr. Alexander to seek nullification of the trial court's May 22, 2019 judgment via the filing of a motion. Rather, he should have brought his action alleging fraud or ill practices in a direct action in a petition for nullity in the same court that rendered the judgment he sought to annul.

However, prior to these exceptions being set for hearing, on August 24, 2022, Mr. Alexander filed a "Petition for Absolute Nullity Final Judgments Pursuant to[] Art. 2002, art. 1953, Art. 2001" ("Petition for Absolute Nullity"), wherein he listed the defendants as Mr. Englade and Mr. Wallace; Ms. Kovac; the Board; Ms. Glazer and Meeks; and Davis B. Allgood ("Mr. Allgood"), individually and in his capacity as an attorney representing the Board. Mr. Alexander repeated the assertions from his Motion for Annulment regarding improper service of process of the Board's Motion to Strike. Regarding Mr. Allgood, Mr. Alexander

alleged that he lied in an affidavit regarding service of the Board's Motion to Strike on Mr. Alexander. Mr. Alexander further contended that Mr. Allgood failed to secure proper service of the Board's motion, such that Mr. Alexander was "completely unaware" of it.

In response to Mr. Alexander's Petition for Absolute Nullity, on September 12, 2022, Mr. Englade and Mr. Wallace filed "Exceptions of Peremption and No Cause of Action and Request for Award of Attorney Fees." Then, on October 5, 2022, the Board and Mr. Allgood filed a "Motion to Strike by Defendants Board and by Allgood, Combined with Their Peremptory Exception Pleading the Objections of No Cause of Action, Prescription, Peremption, and Res Judicata, and Their Motion for Attorney's Fees." Therein, in pertinent part, they contended that the trial court should grant their exception of res judicata because Mr. Alexander's claims and arguments regarding fraud or ill practices had "all been adjudicated, repeatedly." The Board and Mr. Allgood argued:

> When a litigant has made his nullity arguments and they have been rejected in a final judgment, it is over – particularly where this has occurred on appeal. . . . Even where the litigant did not argue for nullity, if even the grounds for the alleged nullity appear in an appellate record, the final judgment is supposed to preclude further consideration.

They asserted that res judicata was proper under both La. C.C.P. art. 2005 and La. R.S. 13:4231(3).

The district court set all exceptions for a hearing on October 27, 2022. At the outset, the trial court stated that Mr. Alexander's Motion for Annulment was procedurally improper and granted Appellees' exceptions of unauthorized use of a summary proceeding. Having so granted the exceptions of unauthorized use of a summary proceeding, counsel for Ms. Kovac stated, "[i]f the [M]otion [for

Annulment] from January . . . [20]21 is gone, all [that is] left is [Mr. Alexander's] [P]etition [for Absolute Nullity] of August . . . [20]22." To which the trial court responded, "Correct. Correct. To which exceptions lie." However, counsel for Ms. Kovac explained that Ms. Kovac had never been served with Mr. Alexander's Petition for Absolute Nullity and thus had only filed exceptions to his Motion for Annulment. Thereafter, Mr. Allgood (as counsel for the Board) argued that Mr. Alexander already argued insufficiency of service of process at a hearing before the trial court prior to the trial court rendering its May 22, 2019 judgment and before this Court during his 2019 Appeal. After Mr. Allgood's argument, counsel for Ms. Glazer and Meeks also stated that they did not file any additional exceptions because they were not served with Mr. Alexander's Petition for Absolute Nullity. Thereafter, the trial court instructed Mr. Alexander to "specifically address to the Court the exceptions that have been filed," explaining that the court was "most concerned with . . . res judicata because it appears . . . that this has all been said and done and resolved." In response, Mr. Alexander explained that he filed his Motion for Insufficiency of Service of Process and that during the trial court's May 2019 hearing the trial court judge asked Mr. Allgood if there was service, to which Mr. Allgood replied in the affirmative. Mr. Alexander alleged that Mr. Allgood's response during the hearing was untrue, and that there "was some oversight on the Fourth Circuit" during his 2019 Appeal. He acknowledged that the Louisiana Supreme Court denied his writ application following his 2019 Appeal. Nonetheless, Mr. Alexander argued that because of the "holdings . . . without any service of process, the matter should be absolute null [sic]." After Mr. Alexander presented his argument, the trial court orally sustained the exception of res judicata, explaining:

> I am bound by the [Louisiana] Fourth Circuit [Court of Appeal]. And I am bound by what comes from the [Louisiana] Supreme Court.
>
> This matter, in every respect in every which way I try to look at this, has been resolved. It has been adjudicated. . . . And every which way I see it, [it is] done. [It is] concluded. So I do have to grant the . . . exception of res judicata.[ ]

After sustaining the exception of res judicata, the trial court stated, "I believe that the rest of the exceptions are of no moment with the res judicata determination so [I am] overruling the remaining matters."

Thereafter, the trial court stated that it needed to address a motion to tax fees and costs by Ms. Glazer and Meeks. The trial court explained that it had decided to deny the motion, noting that Mr. Alexander was representing himself. Counsel for Ms. Glazer and Meeks responded, "I am relying on the motion, Your Honor." Counsel for Mr. Englade and Mr. Wallace stated that they had also filed a motion to tax costs, and the trial court stated it was denying the motion. Counsel for Ms. Kovac explained that his client had already been awarded costs by the trial court (in the form of a $75 filing fee), and the trial court responded, "[t]o the extent that you are requesting the tax of costs to the clerk's office, I will grant that. I will deny any request for attorney[']s fees that may have been pending." Then, counsel for the Board explained that the Board had "a motion for the tax and the costs which have already been awarded. And the Fourth Circuit specifically remanded the case to this Court for an increase in the attorney[']s fee award on the Article 971 motion to strike for having the defendant on a frivolous appeal." Counsel for the Board continued, however, that "based on the rulings of this [c]ourt and the Fourth Circuit, [I am] entitled to have costs taxed and an increase in the attorney[']s fee award." The trial court responded, "To the extent that this Court is being directed [and] specifically commanded by the Fourth Circuit to make a determination, the

Court will take the attorney[']s fees and costs under advisement for an in camera inspection and will then provide a judgment."

After the October 27, 2022 hearing, the trial court took the matter under advisement and issued its judgment on November 2, 2022. That judgment stated:

> **THE COURT**, after considering the relevant pleadings filed, arguments of counsel and Mr. Alexander, with law and evidence being in favor therein, and for the reasons orally stated by the Court on the record, issues the following Judgment:
>
> **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that, with respect to Plaintiff's Motion for Annulment of Judgments on Grounds of Fraud and Fraud on the Court, Defendants' Exception of Unauthorized Use of a Summary Proceeding is **SUSTAINED**, Defendants' Exceptions of Peremption and No Cause of Action are **DENIED AS MOOT**, and Defendants' Request for Costs and Attorney Fees are **DENIED**.
>
> **IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Petitioner's Motion for Annulment of Judgments on the Grounds of Fraud and Fraud on the Court is **MOOT** pursuant to Defendants' Exception of Unauthorized Use of a Summary Proceeding.
>
> **IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Defendants' peremptory exception of *Res Judicata* is **SUSTAINED**.
>
> **IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** the Petition for Absolute Nullity of Final Judgment is **DISMISSED WITH PREJUDICE** pursuant to the granting of Defendants' Exception of Res Judicata.
>
> **IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Petitioner's "Motion to Disqualify the [sic] Dennis Phayer, Burglass & Tankersely [sic], Davis Allgood, and the Attorney General's Office" is **DENIED**, and Defendants' responsive pleadings are rendered **MOOT**. Defendants' Request for Costs and Attorney Fees are **DENIED**, all parties to bear their own costs.
>
> **IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Defendants, James Englade, Lance Wallace, Phyllis Glazer and Meeks & Associates' respective Motions to Tax Costs are **DENIED**.

21

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED**, that Defendant Annette Kovac's Motion to Tax Costs is hereby **GRANTED**, and Petitioner Dwayne Alexander is hereby ordered to pay the sum of Seventy-Five Dollars ($75.00) to the order of: "LeBlanc Fantaci Villio, LLC" acting as counsel for Defendant, Annette Kovac.

**THE COURT**, on remand from the Fourth Circuit, as being directed to make a determination on the following Motions, after considering the relevant pleadings filed, arguments of counsel and Mr. Alexander, issues the following Judgment:

**IT IS ORDERED, ADJUDGED, AND DECREED** that, pursuant to the Fourth Circuit's finding that [the Board] is entitled to an increase in Article 971 sanctions, the Defendant Louisiana Board of Private Investigator Examiner's Re-urged Motion to Tax Costs and for Additional Attorney's Fees, is **GRANTED** and Petitioner Dwayne Alexander is hereby ordered to pay the sum of Five-Hundred Twenty-Five Dollars ($525), representing costs in this Court, and Five Hundred Dollars ($500), in addition to the previously awarded sum, representing additional attorney's fees, to the [Board].

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Defendants' Phyllis Glazer and Meeks & Associates, LLC's Motion for Sanctions pursuant to Article 863 is **DENIED**.

Mr. Alexander's timely appeal follows.

## ASSIGNMENTS OF ERROR

In his brief to this Court, Mr. Alexander asserts three assignments of error.

Specifically, he contends:

1. The trial court committed legal error when it failed to consider that the under lying [sic] case *Alexander v. La. State Board of Private Investigator Examiners*, 2015-0537 (La. App. 4 Cir. 2/17/17), 211 So.3d 544, *writ denied*, 221 So. 3d 855 (La. 2017) had decided the issue of the cease-and-desist order's falsity, permitting the instant defamation action without delay.

2. The trial court committed legal error when it dismissed plaintiff [sic] Petition for Absolute Nullity of Final Judgment with Prejudice Pursuant to Defendant's Exception of Res Judicata because 1) the record shows there was no service of the motion and rule date setting the motion; 2) no evidence was adduced and all evidence adduced in *Alexander v. La. State Board of Private Investigator Examiners*, 2015-0537 (La. App. 4 Cir. 2/17/17), 211 So.3d 544, *writ denied*, 221 So. 3d 855 (La. 2017) shows that the cease and desist

22

order was a false document, and 3) the motion is meritless because this is a private matter.

3. The trial court committed legal error when it granted defendant's [sic] Res Judicata exceptions when plaintiff [sic] claims were never litigated. The record will show there is no evidence showing the claims in the instant case that were ever litigated.

## DISCUSSION

Based on our review of the record, we find that resolution of this matter hinges on determining whether the trial court correctly sustained the exception of unauthorized use of a summary proceeding and whether the trial court correctly concluded that res judicata applies so as to bar Mr. Alexander's claims. We discuss each of these in turn.

### Whether the Trial Court Properly Sustained the Exception of Unauthorized Use of a Summary Proceeding

In its November 2, 2022 judgment, the trial court sustained the exception of unauthorized use of a summary proceeding, which all Appellees filed. Pursuant to sustaining this exception, the trial court held that Mr. Alexander's Motion for Annulment was moot. We begin by considering whether the trial court properly sustained the exception of unauthorized use of a summary proceeding, thereby rendering Mr. Alexander's Motion for Annulment moot.

Unauthorized use of a summary proceeding is an "objection[] which may be raised through the dilatory exception" according to La. C.C.P. art. 926(A)(3). As this Court has previously explained, "this exception is . . . designed to test whether an action should proceed in a summary manner rather than by ordinary proceeding." *Hatcher v. Rouse*, 2016-0666, p. 4 (La. App. 4 Cir. 2/1/17), 211 So.3d 431, 433 (citing *Cent. Cmty. Sch. Bd. v. E. Baton Rouge Par. Sch. Bd.*, 2008-0036, p. 11 (La. App. 1 Cir. 6/6/08), 991 So.2d 1102, 1110). Per La. C.C.P. art.

23

851, "[t]here are three different modes of procedure used in civil matters in Louisiana trial courts: ordinary, summary, and executory." *Succession of Gendron*, 2017-216, p. 9 (La. App. 5 Cir. 12/27/17), 236 So.3d 802, 809. "Ordinary proceedings . . . are to be used in the district courts in all cases, except as otherwise provided by law." La. C.C.P. art. 851. "Summary and executory proceedings are regulated by the provisions of Book V" of the Louisiana Code of Civil Procedure. *Id.*

Located in Book V of the Louisiana Code of Civil Procedure are Articles 2591 - 2596, which are in Title I. Summary Proceedings. According to La. C.C.P. art. 2591, "[s]ummary proceedings are those which are conducted with rapidity, within the delays allowed by the court, and without citation and the observance of all the formalities required in ordinary proceedings." Louisiana Code of Civil Procedure Article 2591 provides a list of instances in which summary proceedings may be used:

> (1) An incidental question arising in the course of judicial proceedings, including the award of and the determination of reasonableness of attorney fees.

> (2) An application for a new trial.

> (3) An issue which may be raised properly by an exception, contradictory motion, or rule to show cause.

> (4) An action against the surety on a judicial bond after judgment has been obtained against the principal, or against both principal and surety when a summary proceeding against the principal is permitted.

> (5) The homologation of a judicial partition, of a tableau of distribution or account filed by a legal representative, or of a report submitted by an auditor, accountant, or other expert appointed by the court; and an opposition to any of the foregoing, to the appointment of a legal representative, or to a petition for authority filed by a legal representative.

(6) A habeas corpus, mandamus, or quo warranto proceeding.

(7) The determination of the rank of mortgages, liens, and privileges on property sold judicially, and of the order of distribution of the proceeds thereof.

(8) The original granting of, subsequent change in, or termination of custody, visitation, and support for a child; support for a spouse; injunctive relief; support between ascendants and descendants; use and occupancy of the family home or use of community movables or immovables; or use of personal property.

(9) An action to compel an accounting at termination of parental authority; and an action to seek court approval to alienate, encumber, or lease the property of a minor, to incur an obligation of a minor, or to compromise the claim of a minor.

(10) An action to annul a probated testament under Article 2931.

(11) An action to enforce the right to a written accounting provided for in R.S. 9:2776.

(12) An action for dissolution or specific performance of a compromise entered pursuant to Article 1916(B) or by consent judgment.

(13) All other matters in which the law permits summary proceedings to be used.

As the above list demonstrates, "[a]nnulment of judgment is not a proceeding which may be disposed of summarily under the provisions of law." *Veillon v. Veillon*, 517 So.2d 936, 941 (La. App. 3d Cir. 1987).

Thus, in discussing La. C.C.P. arts. 2591 - 2596, this Court has held that an action for nullity of judgment is not a summary proceeding. *Baton Rouge Bank & Trust Co. v. Subco, Inc.*, 306 So.2d 312, 315 (La. App. 4th Cir. 1974) (first citing *Columbia Radio & Supply Co. v. Jordan*, 215 So.2d 553 (La. App. 4th Cir. 1968); and then citing *Garnett v. Ancar*, 203 So.2d 812 (La. App. 4th Cir. 1967)). Rather, an action for nullity must comply with the rules governing ordinary proceedings, including citation and service. *Id.* Accordingly, if a plaintiff attempts to institute an

action to annul a judgment by a summary proceeding, the trial court is correct to sustain an exception of improper use of summary process filed by the defendant(s). *Veillon*, 517 So.2d at 941.

In this matter, Mr. Alexander initially sought to establish that the trial court's May 22, 2019 judgment was a nullity in his Motion for Annulment. In response, Appellees filed their exceptions of unauthorized use of a summary proceeding. Because Mr. Alexander attempted to institute his action to annul via a summary proceeding with his Motion for Annulment, the trial court was correct in sustaining Appellees' exceptions of improper use of a summary proceeding in light of the foregoing law. Accordingly, we affirm that part of the trial court's November 2, 2022 judgment that sustained Appellees' exceptions of unauthorized use of a summary proceeding, and we affirm the part of the judgment denying their exceptions of peremption and no cause of action as moot in light of the sustaining of the unauthorized use exception. Similarly, we affirm the trial court's finding that Mr. Alexander's Motion for Annulment was rendered moot by the sustaining of Appellees' exceptions of unauthorized use of summary proceeding. Having so held, we arrive at the same point that the trial court did: without Mr. Alexander's Motion for Annulment, all that remains is his Petition for Nullity and whether res judicata bars it from moving forward.

## Res Judicata

### *Standard of Review*

We begin our discussion about the applicability of res judicata with a consideration of the appropriate standard of review. When an appellate court reviews a trial court's "grant[] or denial of an exception [of] *res judicata*, the appellate court must determine whether the trial court's decision is legally correct

or incorrect." *Bd. of Supervisors of La. State Univ., Agr. & Mech. Coll. v. Dixie Brewing Co.*, 2013-0250, 0251, 0252, p. 2 (La. App. 4 Cir. 12/4/13), 131 So.3d 130, 132 (citing *Myers v. Nat'l Union Fire Ins. Co. of La.*, 2009-1517, p. 5 (La. App. 4 Cir. 5/19/10), 43 So.3d 207, 210). In other words, because "[t]he res judicata effect of a prior judgment" constitutes "a question of law," the appellate court reviews the matter *de novo*. *LaBarre v. Occidental Chem. Co.*, 2023-0139, p. 8 (La. App. 1 Cir. 9/28/23), 376 So.3d 896, 901 (citing *Pierrotti v. Johnson*, 2011-1317 (La. App. 1st Cir. 3/19/12), 91 So.3d 1056, 1063). Accordingly, we review this issue *de novo*.

### *Time for Raising*

Before outlining the principles applicable to res judicata, we next consider when a party must raise this exception. Res judicata is one of "[t]he objections that may be raised through the peremptory exception." La. C.C.P. art. 927(3). It can be pled for the first time before an appellate court but sustained only if proof of the ground of the exception appears in the record on appeal. *Bethel v. Simon*, 2022-198, p. 3 (La. App. 3 Cir. 6/22/22), 344 So.3d 226, 229 (citing La. C.C.P. art. 2163). An appellate court can even "notice[] and suppl[y]" the objection of res judicata "on its own motion." *Bailey v. Clark*, 2020-0257, p. 4 (La. App. 1 Cir. 5/12/21), 326 So.3d 900, 903 (first citing La. C.C.P. art. 927(B); and then citing *Johnson v. Univ. Med. Ctr. in Lafayette*, 2013-0040 (La. 3/15/13), 109 So.3d 347, 349).

As stated previously, the Board filed an exception of res judicata with the trial court, which the trial court sustained in its November 2, 2022 judgment. On appeal, the Board again argues in its brief that res judicata applies so as to bar Mr. Alexander's claims. Before the trial court, Ms. Glazer and Meeks filed a "Motion

to Adopt Defendants' Responses to Plaintiff's Motion for Annulment of Judgments on the Grounds of Fraud on the Court and Request for Costs and Attorney Fees," thereby adopting the Board's res judicata exception. In their brief to this Court, Ms. Glazer and Meeks argue that Mr. Alexander's Petition for nullity is barred by res judicata. The other Appellees did not assert res judicata before the trial court. However, in their Appellee Brief, Mr. Englade and Mr. Wallace argue that a "foregoing analysis applies equally to, and serves to negate, [Mr.] Alexander's third Assignment of Error – that res judicata under La. R.S. 13:4231 does not apply." Additionally, they dedicate a paragraph of their brief to adopting the arguments of their co-Appellees, and all co-Appellees argue for res judicata. In her brief, Ms. Kovac asserts that Mr. Alexander's Petition for Nullity is barred by res judicata, such that the trial court properly dismissed it. In her brief, Ms. Kovac also states: "to the extent that the exception of res judicata considered by the [trial] [c]ourt is deemed limited to" the Board, Ms. "Kovac hereby pleads the peremptory exception of res judicata, avers that the grounds for the exception are well supported by the record on appeal, and respectfully requests that this Court dismiss [Mr.] Alexander's" Petition for Nullity. Thus, all Appellees make the argument for res judicata in their appellate briefs to this Court and—for those that did not raise the exception at the trial court—they were legally capable of raising it for the first time on appeal. Next, we turn to the principles applicable to res judicata.

### Principles Applicable to Res Judicata

"Res judicata is a concept by which [a party] may defeat an action by declaring the claim extinguished because it already has been litigated." *Walton v. Burns*, 47,388, 47,428, p. 9 (La. App. 2 Cir. 1/16/13), 151 So.3d 616, 621 (citing La. R.S. 13:4231). As this Court has explained, "[t]he doctrine of res judicata

precludes re-litigation of all causes of action arising out of the same transaction or occurrence that were the subject matter of a prior litigation between the same parties." *Sam v. La. State Racing Comm'n*, 2023-0170, p. 4 (La. App. 4 Cir. 10/24/23), 376 So.3d 953, 956 (quoting *Kimball v. Kamenitz*, 2021-0101, pp. 20-21 (La. App. 4 Cir. 10/26/21), 331 So. 3d 474, 488). This is because "[t]he civilian concept of *res judicata* is based upon a presumption of correctness." *Johnson v. Orleans Par. Sch. Bd.*, 2014-0277, p. 9 (La. App. 4 Cir. 4/26/17), 219 So.3d 452, 462 (quoting *Burguieres v. Pollingue*, 2002-1385, p. 7 (La. 2/25/03), 843 So. 2d 1049, 1053). Moreover, "[i]nherent in the concept of res judicata is the principle that a party had the opportunity to raise the claim in the first adjudication." *Terrebonne Fuel & Lube, Inc. v. Placid Refining Co.*, 1995-0654, p. 16 (La. 1/16/96), 666 So.2d 624, 634. "The doctrine of res judicata is not discretionary" but rather "mandates that final judgments be given effect." *LaBarre*, 2023-0139, p. 7, 376 So.3d at 902 (citing *State ex rel. Guilbeau v. BEPCO, L.P.*, 2020-0429 (La. App. 1 Cir. 9/20/21), 341 So.3d 1, 8, *writ denied*, 2022-00882 (La. 4/4/23), 358 So.3d 854).

Louisiana Revised Statutes 13:4231 establishes the legal doctrine of res judicata in our state. It provides:

> Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:

> (1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.

> (2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are

> extinguished and the judgment bars a subsequent action on those causes of action.
>
> (3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.

La. R.S. 13:4231. The Louisiana Supreme Court has stated that "the chief inquiry" for determining whether res judicata applies "is whether the second action asserts a cause of action which arises out of the same transaction or occurrence that was the subject matter of the first action." *Burguieres v. Pollingue*, 2002-1385, p. 7 (La. 2/25/03), 843 So. 2d 1049, 1053. However, that is not the only inquiry as a party must prove five elements for a subsequent action to be barred by res judicata:

> (1) the judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation.

*Sam*, 2023-0170, p. 5, 376 So.3d at 957 (quoting *Myers*, 2009-1517, p. 6, 43 So. 3d 207, 211).

The matter *sub judice* concerns whether res judicata applies in a nullity action. Regarding the annulment of judgments, La. C.C.P. art. 2005 provides that "[a] judgment affirmed, reversed, amended, or otherwise rendered by an appellate court may be annulled only when the ground for nullity did not appear in the record of appeal or was not considered by the appellate court." In discussing La. C.C.P. art. 2005, the Louisiana First Circuit Court of Appeal has explained that "[t]he law is clear that either of the conditions in La. [C.C.]P. art. 2005 may prohibit maintenance of a nullity action." *Dumas v. Bd. of Ethics*, 2019-0289, p. 6 (La. App. 1 Cir. 11/15/19), 290 So.3d 1143, 1147 (citing *Radcliffe 10 L.L.C. v. Zip*

30

*Tube Sys. of La., Inc.*, 2009-0417, 0418, p. 7 (La. App. 1 Cir. 12/29/09), 30 So.3d 825, 829, That is, "both conditions provided in La. [C.C.]P. art. 2005 need not be present" for res judicata to apply in a nullity action. *Id.* Because La. C.C.P. art. 2005 is more specifically directed toward the situation in this matter (i.e., an assertion of res judicata in a nullity action) than La. R.S. 13:4231, we consider its applicability. *See Burge v. State*, 2010-2229, p. 5 (La. 2/11/11), 54 So.3d 1110, 1113 (stating that "[t]he general rule of statutory construction is that a specific statute controls over a broader, more general statute").

Based on our review of the record, including the actions of the trial court and this Court's 2019 Appeal, we agree with the trial court and Appellees that res judicata bars Mr. Alexander's Petition for Nullity. The alleged nullity of the trial court's May 10, 2019 judgment and all of Mr. Alexander's arguments in support of his allegations were "actually litigated and determined" in the trial court and in this Court. In particular, Mr. Alexander's contention that the May 22, 2019 trial court judgment should be deemed a nullity is that one of the motions ruled upon in that judgment was obtained by fraud and ill practices, namely the Board's Motion to Strike. Not only did the record in Mr. Alexander's 2019 Appeal contain the Board's Affidavit of Service regarding its Motion to Strike, as well as Mr. Alexander's Motion for Insufficiency of Service of Process, this Court's Opinion demonstrates that the Court considered Mr. Alexander's arguments on this issue. Specifically, the Court held:

> The record contains a signed return on service of [the Board]'s Special Motion to Strike. We find the record dispositive on the issue of service. Therefore, the trial court did not err by denying Mr. Alexander's Motion for Insufficiency of Service of Process as it relates to the Special Motion to Strike.

31

We further note that Mr. Alexander's first assignment of error in the present appeal is identical to his assignment of error in his 2019 Appeal. That is, Mr. Alexander questioned in his 2019 Appeal as he does in his present appeal the legality of the trial court's grant of the exception of prematurity. In the Opinion rendered in Mr. Alexander's 2019 Appeal, this Court concluded that the trial court correctly sustained the exception of prematurity because Mr. Alexander's claims of defamation could not be brought until the underlying suit is concluded. As with his allegations of insufficiency of service of process, this Court already considered Mr. Alexander's arguments on this point in his 2019 Appeal and will not reconsider it.

In sum, we affirm the trial court's November 2, 2022 judgment insofar as it granted the Board's and Ms. Glazer and Meeks' exception of res judicata. Because all Appellees raised this exception on appeal, we conclude that Mr. Alexander's claims against all Appellees are barred by res judicata. In light of this conclusion, we also affirm the trial court's decision to dismiss Mr. Alexander's Petition for Absolute Nullity with prejudice.

Having now affirmed the trial court's decision to sustain the exceptions of unauthorized use of summary proceeding and res judicata, we next look at the remaining parts of the trial court's November 2, 2022 judgment, as well as the answers filed by Appellees in response to Mr. Alexander's appeal, to resolve those matters.

### Other Matters Addressed by the November 2, 2022 Judgment

***Denial of Costs and Fees for Exceptions of Unauthorized Use of a Summary Proceeding, No Cause of Action, and Peremption***

As previously summarized, in response to Mr. Alexander's Motion for Annulment, all Appellees filed an exception of unauthorized use of a summary

proceeding.[2] The trial court sustained Defendants' exceptions of unauthorized use of a summary proceeding, and we have affirmed that decision. With their exception of unauthorized use of a summary proceeding, Mr. Englade, Mr. Wallace, and Ms. Kovac also asserted the exceptions of no cause of action and peremption, while the Board asserted the exception of no cause of action but did not file an exception of peremption. Ms. Glazer and Meeks moved to adopt their co-defendants' responses to Mr. Alexander's Motion for Annulment, thereby adopting all of the foregoing exceptions. All Appellees requested attorney fees in conjunction with their exceptions. In addition, Ms. Glazer and Meeks requested costs in their motion to adopt their co-defendants' responses. In the November 2, 2022 judgment, after sustaining Appellees' exceptions of unauthorized use of a summary proceeding and denying their exceptions of peremption and no cause of action as moot, the trial court denied Appellees' requests for costs and attorney fees.

In his Motion for Annulment, Mr. Alexander contended that the trial court's May 22, 2019 judgment should be set aside as "it was based on fraud on the [c]ourt, and fraud and ill practice." Louisiana Code of Civil Procedure Article 2004 is titled "Annulment for vices of substance; peremption of action." It provides:

> A. A final judgment obtained by fraud or ill practices may be annulled.
>
> B. An action to annul a judgment on these grounds must be brought within one year of the discovery by the plaintiff in the nullity action of the fraud or ill practices.

---

[2] Mr. Englade and Mr. Wallace filed their exception of unauthorized use of a summary proceeding on February 8, 2021, as did Ms. Kovac. Then, on February 11, 2021, the Board filed its exception of unauthorized use of a summary proceeding. That same day, Ms. Glazer and Meeks filed a motion to adopt the other Defendants' responses to Mr. Alexander's Motion for Annulment.

C. *The court may award reasonable attorney fees incurred by the prevailing party in an action to annul a judgment on these grounds.*

La. C.C.P. art. 2004 (emphasis added). Though La. C.C.P. art. 2004(C) did not mandate that the trial court had to award attorney fees to Appellees as the prevailing party in an action to annul on the basis of fraud or ill practices (i.e., the Article uses the permissive word "may" rather than "shall"), this Court has decided to reverse the trial court's decision not to award attorney fees to Appellees' in association with their successful defense of Mr. Alexander's Motion for Annulment via their exception of unauthorized use of a summary proceeding. In so ruling, we note that the protracted nature of this matter is due, in large part, to Mr. Alexander's repetitive and frivolous filings. *See* La. C.C.P. art. 2164 (providing that "[t]he appellate court shall render any judgment which is just, legal, and proper upon the record on appeal").

Similarly, we have decided to reverse the trial court's denial of Ms. Glazer and Meeks' request for costs associated with their motion to adopt their co-defendants' responses to Mr. Alexander's Motion for Annulment; and, although Mr. Englade and Mr. Wallace, Ms. Kovac, and the Board did not request costs in their exceptions, we have nonetheless decided to award to them the costs associated with the filing of their exceptions in response to Mr. Alexander's Motion for Annulment. Louisiana Code of Civil Procedure Article 1920 provides:

> Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause.
>
> Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable.

34

Thus, the trial court could have assessed costs against Mr. Alexander pursuant to La. C.C.P. art. 1920, though the trial court was not required to do so. The ability of trial courts to assess costs against the party cast in judgment is true even when, as here, the party cast in judgment is indigent and had been proceeding *in forma pauperis*. *Herigodt v. Town of Golden Meadow*, 2020-0752, pp. 16-17 (La. App. 1 Cir. 2/22/21), 321 So.3d 1004, 1016-17 (first citing La. C.C.P. art. 5188; and then citing *Smith v. Smith*, 543 So. 2d 608, 608 (La. App. 2d Cir. 1989)). In interpreting La. C.C.P. art. 1920, this Court has explained that "[a] trial court has great discretion in awarding costs . . . and can only be reversed on appeal upon a showing of an abuse of that discretion." *Certain St. Bernard Par. Gov. Comp. Disks v. St. Bernard Par. Gov.*, 2013-1054, p. 3 (La. App. 4 Cir. 12/18/13), 130 So.3d 56, 58 (alteration in original) (quoting *Hendrix v. Maison Orleans I, L.L.C.*, 2011-1349, p. 16 (La. App. 4 Cir. 9/26/12), 101 So.3d 1013, 1023). However, that "discretion is not boundless." *Id.* at p. 3, 130 So.3d at 58-59. *See also* La. C.C.P. art. 2164; *Brown v. Am. Honda Motor Co.*, 1997-599, pp. 5-6 (La. App. 3 Cir. 12/3/97), 704 So.2d 1234, 1237-38 (finding that "equitable considerations of justice and fundamental fairness to the party who has been damaged by the wrongdoing of an opposing [party] is of prime concern" and that "the trial and appellate courts of this state are too busy to have their time wasted having to rehear matters"). Mr. Alexander was the party cast in judgment, and Appellees were successful in pleading their exception of unauthorized use of a summary proceeding. Again, given that the protracted nature of this matter is due, in large part, to Mr. Alexander's repetitive and frivolous filings to which Appellants have had to respond, we find that an award of costs to Appellees for the filing of their

exceptions in response to Mr. Alexander's Motion for Annulment is just, legal, and proper based on the appellate record. La. C.C.P. art. 2164.

In sum, we reverse the trial court's denial of the requests for attorney fees as found in Mr. Englade and Mr. Wallace's "Exceptions of Peremption, No Cause of Action, and Unauthorized Use of a Summary Proceeding and Request for Award of Attorney Fees;" in Ms. Kovac's "Exception of Peremption, Exception of No Cause of Action, Exception of Unauthorized Use of Summary Proceeding, and Motion for Attorney Fees in Response to Plaintiff's Motion for Annulment of Judgments on the Grounds of Fraud on the Court;" the Board's "Peremptory Exception . . . Pleading the Objections of No Cause of Action, Prescription, and Res Judicata, Combined with Dilatory Exception Pleading the Objection of Unauthorized Use of Summary Proceeding and with Motion for Attorney's Fees under [La. C.C.P.] art. 2004;" and Ms. Glazer and Meeks' "Motion to Adopt Defendants' Responses to Plaintiff's Motion for Annulment of Judgments on the Grounds of Fraud on the Court and Request for Costs and Attorney Fees." We reverse the trial court's denial of Ms. Glazer and Meeks' request for costs as found in their "Motion to Adopt Defendants' Responses to Plaintiff's Motion for Annulment of Judgments on the Grounds of Fraud on the Court and Request for Costs and Attorney Fees." Finally, we award costs to Mr. Englade and Mr. Wallace for their "Exceptions of Peremption, No Cause of Action, and Unauthorized Use of a Summary Proceeding and Request for Award of Attorney Fees;" to Ms. Kovac for her "Exception of Peremption, Exception of No Cause of Action, Exception of Unauthorized Use of Summary Proceeding, and Motion for Attorney Fees in Response to Plaintiff's Motion for Annulment of Judgments on the Grounds of Fraud on the Court;" and to the Board for its "Peremptory Exception . . . Pleading

the Objections of No Cause of Action, Prescription, and Res Judicata, Combined with Dilatory Exception Pleading the Objection of Unauthorized Use of Summary Proceeding and with Motion for Attorney's Fees under [La. C.C.P.] art. 2004." We remand this matter to the trial court for a determination of the amount of the trial court costs and attorney fees owed to Mr. Englade and Mr. Wallace, Ms. Kovac, the Board, and Ms. Glazer and Meeks for those respective exceptions and motion filed in response to Mr. Alexander's Motion for Annulment.

***Denial of Motion to Disqualify and Denial of Associated Costs and Attorney Fees***

On October 4, 2022, Mr. Alexander filed a "Memorandum in Support of Motion to Disqualify the [sic] Dennis Phayer, Burglass & Tankersely, Davis Allgood, and the Attorney General's Office" ("Motion to Disqualify"). In response, on October 17, 2022, Mr. Englade and Mr. Wallace filed an opposition to Mr. Alexander's Motion to Disqualify. In arguing that the trial court should deny Mr. Alexander's Motion to Disqualify, Mr. Englade and Mr. Wallace contended that "[g]iven the history of [Mr.] Alexander's prior litigation and the substance of the allegations asserted by him in multiple pleadings over the past several years, it is clear that his instant [M]otion to [D]isqualify is more accurately characterized as an opposition to and attempt to delay adjudication of both the several concurrently pending defense motions to tax costs against him as well as the several defense exceptions to his nullity motion and petition set for hearing on October 27, 2022." On October 18, 2022, the Board likewise filed an opposition to Mr. Alexander's Motion to Disqualify. Therein, the Board argued that Mr. Alexander's Motion to Disqualify was frivolous and had been brought in bad faith, and the Board asserted that it constituted "yet another among many reasons that

existing sanctions should be enforced, and that additional and more effective sanctions should be imposed[] on Mr. Alexander." The following day, October 19, 2022, Ms. Glazer and Meeks also filed an opposition to Mr. Alexander's Motion to Disqualify. In pertinent part, in their opposition, Ms. Glazer and Meeks asserted that Mr. Alexander's Motion to Disqualify was "another example of Mr. Alexander misusing our judicial system to harass the Defendants" and was frivolous. They requested that the trial court "award[] the Defendants court costs and attorney fees they incurred for defending [Mr. Alexander]'s Motion to Disqualify." Ms. Kovac did not file any pleadings in response to Mr. Alexander's Motion to Disqualify.

In its November 2, 2022 judgment, the trial court denied Mr. Alexander's Motion to Disqualify and ruled that the responsive pleadings filed by Mr. Englade and Mr. Wallace, the Board, and Ms. Glazer and Meeks were rendered moot by that denial. We affirm the trial court's decision to deny Mr. Alexander's Motion to Disqualify; and we affirm the trial court's finding that the responsive oppositions were rendered moot by that denial. However, in the November 2, 2022 judgment, after denying Mr. Alexander's Motion to Disqualify, the trial court stated: "Defendants' Requests for Costs and Attorney Fees are **DENIED**, all parties to bear their own costs." Based on our review of the record, only Ms. Glazer and Meeks requested costs and attorney fees in their opposition. Because we agree with the arguments in Ms. Glazer and Meeks' opposition and acknowledge that they had to expend costs and resources to oppose Mr. Alexander's Motion to Disqualify, we hold that the trial court abused its discretion in denying their request for costs and attorney fees, and we reverse the trial court's denial of their request for costs and attorney fees. *See* La. C.C.P. art. 1920; La. C.C.P. art. 2164; *Brown*, 1997-599, pp. 5-6, 704 So.2d at 1237-38; *Herigodt*, 2020-0752, pp. 16-17, 321 So.3d at 1016-17;

38

and *Certain St. Bernard Par. Gov. Comp. Disks v. St. Bernard Par. Gov.*, 2013-1054, p. 3, 130 So.3d at 58. Further, though they did not request them, for the same reasons, we award costs and attorney fees to Mr. Englade and Mr. Wallace and the Board for their oppositions to Mr. Alexander's Motion to Disqualify because, as an appellate court, we are to "render any judgment which is just legal and proper upon the record on appeal." *Id.* We remand this matter to the trial court for a determination of the amount of the trial court costs and attorney fees owed to Mr. Englade and Mr. Wallace, the Board, and Ms. Glazer and Meeks for their respective oppositions to Mr. Alexander's Motion to Disqualify.

***Mr. Englade and Mr. Wallace's, Ms. Kovac's, and the Board's Motion to Tax Costs***

Additionally, before the trial court at the October 27, 2022 hearing were three motions to tax costs. The November 2, 2022 judgment denied a Re-urged Motion to Tax Costs filed by Mr. Englade and Mr. Wallace. Additionally, in the judgment, the trial court granted a Motion to Tax Costs filed by Ms. Kovac and ordered Mr. Alexander to pay $75.00 to Ms. Kovac's counsel. The trial court also granted a Re-urged Motion to Tax Costs filed by the Board and ordered Mr. Alexander to pay $525, "representing costs in [the trial] [c]ourt." As previously excerpted, La. C.C.P. art. 1920 states that "costs shall be paid by the party cast, and may be taxed by a rule to show cause." We affirm the trial court's decision to grant Ms. Kovac's Motion to Tax Costs and award to her the sum of $75.00. We also affirm the trial court's decision to grant the Board's Motion to Tax Costs and award to it the sum of $525. However, we find that the trial court abused its discretion in denying Mr. Englade and Mr. Wallace's Re-urged Motion to Tax Costs. As previously stated, our review of this record and this litigation history

reveals that the protracted nature of this dispute is due mostly to Mr. Alexander's repetitive and unfounded pleadings. Therefore, we reverse the trial court's denial of Mr. Englade and Mr. Wallace's Re-Urged Motion to Tax Costs, and we remand this matter to the trial court to determine how much Mr. Englade and Mr. Wallace are owed in light of our decision to grant their Re-urged Motion to Tax Costs. *See* La. C.C.P. art. 2164 (providing that "[t]he appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may . . . tax the costs of the lower . . . court . . . as in its judgment may be considered equitable.")

## Answers to Appeal

### *Frivolous Appeal*

All Appellees filed Answers to Mr. Alexander's appeal. Therein, they contend that Mr. Alexander's appeal is frivolous so as to entitle them to recover frivolous appeal damages, including attorney fees and costs, for having to litigate the appeal. Louisiana Code of Civil Procedure Article 2133(A) states, in pertinent part, that:

> An appellee shall not be obliged to answer the appeal unless he desires to have the judgment modified, revised, or reversed in part or unless he demands damages against the appellant. In such cases, he must file an answer to the appeal, stating the relief demanded, not later than fifteen days after the return day or the lodging of the record whichever is later.

Further, La. C.C.P. art. 2164 provides:

> The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages, including attorney fees, for frivolous appeal or application for writs, and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable.

40

As this Court has previously explained, "[a]ppeals are always favored and, unless the appeal is unquestionably frivolous, damages will not be granted." *Alexander*, 2019-0778, p. 20, 293 So.3d at 1256 (quoting *Tillmon v. Thrasher Waterproofing*, 2000-0395, p. 8 (La. App. 4 Cir. 3/28/01), 786 So. 2d 131, 137). This is because frivolous appeal damages may result in a "chilling effect . . . on the appellate process." *Id.* Nonetheless, "if [an appeal] does not present a substantial legal question, if the sole purpose of the appeal is delay, or if the appealing counsel does not seriously believe the view of the law that he advocates" then this constitutes a frivolous appeal. *Id.* To this end, "[d]amages for a frivolous appeal will be awarded if the appellant is attempting to delay the action, if the appellant does not believe what he is advocating, or if the appeal presents no substantial legal question." *Id.* (internal quotation marks omitted) (quoting *Hunter v. Maximum Grp. Behavioral Servs., Inc.*, 2010-0930, p. 6 (La. App. 4 Cir. 3/16/11), 61 So. 3d 735, 739). It is only proper to award frivolous appeal damages if "the proposition advocated is so ridiculous or so opposed to rational thinking that it is evident beyond any doubt that it is being deliberately professed for ulterior purposes." *Id.* (quoting *Bottle Poetry, LLC v. Doyle Rest. Grp. Co.*, 2013-0406, p. 9 (La. App. 4 Cir. 1/15/14), 133 So. 3d 60, 67).

We find that Appellees are entitled to an award of frivolous appeal damages. As this Court explained in Mr. Alexander's 2019 Appeal, though he filed his brief *pro se*, Mr. Alexander is "not representative of the average *pro se* litigant." *Alexander*, 2019-0778, pp. 20-21, 293 So.3d at 1257. We find that Mr. Alexander's appeal does not present a substantial legal question. Rather, it presents questions that have already been answered multiple times, and that the sole purpose of the appeal is likely Mr. Alexander's attempt to delay and avoid having to pay the costs

and fees previously assessed. Just as this Court did in Mr. Alexander's 2019 Appeal, we again outline Mr. Alexander's similar and indirectly related lawsuits filed at First City Court and the Orleans Parish Civil District Court, which include, but are not limited to:

1. *Alexander v. Wayne R. Centanni and Centanni Investigative Agency*, CDC No. 09-07153, Div. "F-07" (Unfair and Deceptive Trade Practices);

2. *Alexander v. Cannon Cochran Management Services, Inc. D/B/A CCMSI, Jerry Armatis, Thomas Brechtel, and Carl Ayestas*, CDC No. 09-07154, Div. "D-16" (Retaliatory Discharge, Wrongful Termination, Overtime Wages and Back Pay, Unjust Enrichment, and Whistleblower Protection);

3. *Alexander v. Cannon Cochran Management Services, Inc.*, CDC No. 12 05255, Div. "L-06" (Discrimination);

4. *Alexander v. Angella Myers*, CDC No. 12-5254, Div. "G-11" (Tortious Interference relative to CDC No. 12-05255);

5. *Alexander v. LSBPIE and its Executive Director, James P. Englade, in his official capacity and individually, Dennis J. Phayer, Nancy Marshall, Elliot M. Lonker, Lance Guest, Frilot, L.L.C., Elizabeth Doubleday, Deutsche Kerrigan, L.L.P., and Burglass & Tankersley, L.L.C.*, CDC No. 13-00362, Div. "F-07" (Defamation and Abuse of Process);

6. *Alexander v. Carl Ayestas*, CDC No. 13-09535, Div. "A-16" (Defamation);

7. *Alexander v. Angella Myers*, CDC No. 13-10624, Div. "M-13" (Tortious Interference regarding CDC No. 13-09535);

8. *Alexander v. Jerry Armatis, Myers Law Group, L.L.P., Angella H. Myers, and Mark C. Carver*, First City Court for the Parish of Orleans, No. 13-53519 (Invasion of Privacy);

9. *Alexander v. Lance S. Guest in his official and individual capacity, and Office of Risk Management*, CDC No. 14-03062, Div. "N-08" (Defamation);

10. *Alexander v. The City of New Orleans, Travelers Ins. Co., Brian Thomas, Angela Myers, Myers Law Group, Lawrence W. Gerguson & Associates, Lawrence Ferguson, Mark C. Carver, Cannon Cochran*

42

*Management Services, Inc., Carlos O. Ayestas, Jr., Jerry Armatis*, CDC No. 14-04123, Div. "B-05" (Breach of Contract);

11. *Alexander v. Wayne R. Centanni, individually and d/b/a, Centanni Investigative Agencies, David Parnell, Jr., Lance Wallace, and James Englade*, CDC No. 15-00209, Div. "N-08" (Petition to Annul Judgment for Fraud and Ill Practices regarding CDC No. 09-07153);

12. *Alexander v. The Times-Picayune, L.L.C. and David Hammer*, CDC No. 15 *1258 11890, Div. "M-13" (Libel, Slander, and Defamation);

13. *Alexander v. Blue Williams, L.L.P., LSBPIE, Dennis J. Phayer, David Parnell, Jr., Nancy J. Marshall, James P. Englade, Elizabeth Doubleday, Deutsch Kerrigan, L.L.P., Burglass & Tankersly, L.L.C., and Thomas G. Buck*, CDC No. 17-02215, Div. "I-14" (Defamation);

14. *Alexander v. Blue Williams, L.L.P., Dennis J. Phayer, David Parnell, Nancy J. Marshall, and La. State Board of Private Investigator Examiners*, CDC No. 17-05452, Div. "I-14" (Defamation);

15. *Alexander v. LSBPIE, Sher Garner Cahill Richter Klein & Hilbert, L.L.C., Annette Kovac, Brandon W. Keay, James M. Garner, Debra Fishchman, James P. Englade*, CDC No. 17-05546, Div. "I-14" (Defamation);

16. *Alexander v. Office of Risk Management and Julian S. Thompson, in his official capacity as The Director of Risk Management*, CDC No. 17-10372, Div. "J-15" (Mandamus);

17. *Alexander v. LSBPIE, Lane Wallace, Brett Tweedel, Michael A. Thomas, The State of Louisiana through the Board of Private Investigator Examiners, Sher Garner Cahill Richter Klein McCallister Klien & Hilbert, L.L.C., Dennis Phayer, David Parnell, Lance Wallace, James P. Englade, Del Hahn, Nancy Marshall, Sonia Mallet in her capacity as the Director of Litigation for the Office of the Attorney General for the State of Louisiana, Ryan Luminais, Ronald Luminae, Elliot Lonker, Leblanc Fantaci Villio, L.L.C., Jeff Landry, in his capacity as the Attorney General for the State of Louisiana, Annette Kovac, Delbert Hahn, Phyllis E. Glazer, James Garner, Frilot, L.L.C., Debra Fischman, Michael L. Fantaci, Elizabeth Doubleday, and Deutsch Kerrigan, L.L.P.*, CDC C/A No. 18-02072, Div. "I-14" (Defamation);

18. *Alexander v. Gertraud G. Malmgren, James Young, Peter Weilbacher, USAA Casualty Ins. Co., State Farm Ins. Co., Lobman, Carnahan, Batt, Angelle, & Nader, Stacy Estrada, and David Batt*, CDC No. 2018-09910, Div. "G-11" (Libel and Slander, Fraud and

Fraud on the Court, Conspiracy, Tortious Interference with Contract, Intentional and Fraudulent Misrepresentations, Intentional Infliction of Emotional Distress, and Mental Anguish);

19. *Alexander v. Jeffrey M. Landry, Stephen J. Oats, Warren Orlando, Oat & Marino, Millard Mule, Louisiana Citizens for Job Creators, Inc., Harvey Gulf International Marine, L.L.C., Shane J. Guidry, and David Allen*, CDC No. 2018-10372, Div. "L-06" (Breach of Contract);

20. *Alexander v. LSBPIE, Phyllis Glazer, James P. Englade, Lance Wallace, Annette Kovac, and Meeks & Associates*, CDC No. 2019-0711, Div. "I-14" (Defamation); and

21. *Alexander v. LSBPIE and James P. Englade in his Official Capacity, and James P. Englade Individual Capacity*, CDC No. 2019-10301, Div. "L-06" (Petition to Make Judgment Executory relative to CDC No. 2013-0362).

Moreover, over the years, Mr. Alexander has filed numerous writ applications and appeals with this Court. In fact, this Court handed down an Opinion in another appeal by Mr. Alexander on July 31, 2024, *Alexander v. Blue Williams, L.L.P.*, 2023-0216 (La. App. 4 Cir. 7/31/24), ___ So.3d ___, 2024 WL 3593508. And on this Court's November 7, 2024 docket is yet another appeal by Mr. Alexander. That will mark three appeals by Mr. Alexander that are heard by this Court in the calendar year 2024 alone. We also note that the above list does not even include Mr. Alexander's numerous filings in the Federal Court system. Because of his innumerable federal filings, the United States District Court of the Eastern District of Louisiana issued the following order:

> In addition to the positions stated above, certain defendants also seek additional relief from the Court relative to related further litigation instituted by Plaintiff relating in some way to the investigation services previously provided by him, and/or Worldwide Detective Agency, Inc., to the City of New Orleans and/or CCMSI. See, e.g., Rec. Doc. 20–1, pp. 24–25. Having carefully considered the parties' submissions, as well as the records in the pertinent proceedings previously pending in this Court, **IT IS ORDERED** that:

(1) Dwayne Alexander and Worldwide Detective Agency, Inc. shall not hereafter file, in the United States District Court for the Eastern District of Louisiana, any additional complaint, motion, or other pleading that arises from or is premised upon: (a) Alexander's and/or Worldwide's private investigative services provided to the City of New Orleans and/or CCMSI, (b) private investigation licensing, (c) and/or any litigation regarding same, without first seeking leave of Court to do so, and certifying, in writing, that the proposed submission is not frivolous, presented for an improper purpose, repetitive or duplicative, has evidentiary support, and does not contain any inappropriate, irrelevant, malicious, harassing and/or insulting comments. Failure to comply with this order may result in filings being stricken from the record and/or the imposition of significant financial and/or other sanctions, including payment of excess costs, expenses, and any attorney's fees under 28 U.S.C. § 1927 and/or Federal Rule of Civil Procedure 11.

(2) Dwayne Alexander or anyone acting on his behalf, or on behalf of Worldwide Detective Agency, Inc., must give written notice to any court or agency (including parish, city, state and federal courts or agencies) of all prior and pending litigation filed by Dwayne Alexander or Worldwide Detective Agency, Inc. (or anyone acting on his/its behalf) by appending to the petition or complaint a written summary of all past and pending proceedings that directly or indirectly relate to private investigation services, private investigation licensing, or Cannon Cochran Management Services, Inc., its employees or its attorneys. Failure to comply with this order may result in filings being stricken from the record and/or the imposition of significant financial and/or other sanctions, including payment of excess costs, expenses, and any attorney's fees under 28 U.S.C. § 1927 and/or Federal Rule of Civil Procedure 11.

*Alexander v. City of New Orleans*, No. CIV. A. 12-1524, 2015 WL 160435, at *3-4

(E.D. La. 1/12/15). Subsequently, the United States Fifth Circuit Court of Appeals

stated the following:

Alexander is WARNED, however, that future frivolous, repetitive, or otherwise abusive filings will result in the imposition of progressively severe sanctions, which may include monetary penalties and restrictions on his ability to file pleadings and other documents in this court and in any court subject to this court's jurisdiction. Alexander should review any pending appeals and actions and move to dismiss any that are frivolous. His failure to do so will result in the imposition of sanctions. This warning supplements and does not displace the sanctions orders of the district court.

*Alexander v. Cannon Cochran Mgmt. Servs., Inc.*, 638 Fed. Appx. 410 (5th Cir. 2016).

In light of Mr. Alexander's history in the court systems and in light of his repetitive arguments raised in the matter *sub judice*, we find that Mr. Alexander's appeal is frivolous because there is no substantial legal question presented. Even as a *pro se* appellant, Mr. Alexander could not and should not believe the position he has taken after being informed by the trial court in the May 22, 2019 judgment that his defamation claims cannot be addressed until the underlying matter is resolved and by then being subsequently informed by the trial court at the October 22, 2022 hearing and in the November 2, 2022 judgment that this Court has already considered and ruled on Mr. Alexander's arguments in his 2019 Appeal. Additionally, at the October 22, 2022 hearing, the trial court also told Mr. Alexander that it was "bound by what comes from the [Louisiana] Supreme Court" and that "[t]he [Louisiana] Supreme Court has spoken." To assert the same arguments from his 2019 Appeal in this present appeal after having been so informed constitutes a frivolous appeal. Therefore, we award the following, to be paid by Mr. Alexander, based on his frivolous appeal:

| | |
|---|---|
| Ms. Glazer and Meeks: | $2,000 for attorney fees<br>$1,000 for damages |
| Mr. Englade and Mr. Wallace: | $2,000 for attorney fees<br>$1,000 for damages |
| Board: | $2,000 for attorney fees<br>$1,000 for damages |
| Ms. Kovac: | $2,000 for attorney fees<br>$1,000 for damages. |

As this Court ruled in Mr. Alexander's 2019 Appeal, he must also pay all costs for all Appellees associated with this appeal. *Alexander*, 2019-0778, p. 25, 293 So.3d

at 1260 (citing *Hester v. Hester*, 1998-0854, pp. 5-6 (La. App. 4 Cir. 5/13/98), 715 So. 2d 40, 43). Pursuant to La. C.C.P. art. 2164, we further tax the costs of this appeal and instruct the Clerk of this Court to determine the amount Mr. Alexander owes in light of this ruling. *See* La. C.C.P. art. 2164 (providing that "[t]he appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court . . . may tax the costs of the . . . appellate court"). Though the award of "frivolous appeal damages is sparsely utilized because of the chilling effect it may have on litigation," we again conclude as this Court did in Mr. Alexander's 2019 Appeal that "a chilling effect is necessary for Mr. Alexander given his repetitious court filings and the unique background of the present matter." *Alexander*, 2019-0778, p. 25, 293 So.3d at 1260.

### *Ms. Glazer and Meeks' Answer – Request for Amendment of Judgment*

In their Answer, Ms. Glazer and Meeks also seek modification of the trial court's judgment. They contend that while the trial court stated in the judgment that it was denying a motion to tax cost and a motion for sanctions filed by Ms. Glazer and Meeks, they had neither a pending motion to tax costs nor a motion for sanctions before the trial court at the time of the hearing and subsequent judgment. Accordingly, they ask this Court to amend, modify, or revise the trial court's November 2, 2022 judgment to properly reflect the fact that a motion to tax costs and a motion for sanctions were not before the trial Court on October 25, 2022. Nonetheless, Ms. Glazer and Meeks assert that they have legitimate claims against Mr. Alexander for costs, as well as the right to a contradictory hearing on sanctions, so they ask this Court to remand the issue of damages and sanctions back to the trial court to allow them to file the appropriate motion to recover the damages, attorney fees, and costs this Court awarded them in the 2019 Appeal and

to file and set for contradictory hearing, a motion for sanctions pursuant to La. C.C.P. art. 863.

After reviewing the record, we agree with Ms. Glazer and Meeks that they did not have a pending motion to tax costs before the trial court at the time of the hearing and judgment. Accordingly, we amend that part of the judgment which currently reads:

> **IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Defendants, James Englade, Lance Wallace, Phyllis Glazer and Meeks & Associates' respective Motions to Tax Costs are **DENIED**.

To now read:

> **IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Defendants', James Englade and Lance Wallace's, Motion to Tax Costs is **DENIED**.

That is, we remove the trial court's denial of Ms. Glazer and Meeks' motion to tax costs from the November 2, 2022 judgment because no such motion was before the trial court on the date of the October 27, 2022 hearing. As amended, we affirm that part of the judgment. Nonetheless we agree with Ms. Glazer and Meeks that, like their co-Appellees', they are entitled to having their costs taxed. Thus, we remand this matter to the trial court for Ms. Glazer and Meeks to file the appropriate motion and rule to show cause per La. C.C.P. art. 1920.

However, we disagree with Ms. Glazer and Meeks that they did not have a pending motion for sanctions. This Court's Opinion rendered in Mr. Alexander's 2019 Appeal reveals that in its November 2, 2022 judgment, the trial court was following an Order from this Court to address Ms. Glazer and Meeks' Motion for Sanctions. That is, in the Opinion rendered in Mr. Alexander's 2019 Appeal, this Court found that the trial court erred by not addressing Ms. Glazer and Meeks'

48

Motion for Sanctions pursuant to La. C.C.P. art. 863, so this Court remanded this issue to the trial court for a determination on their motion. In fact, in Mr. Alexander's 2019 Appeal, Ms. Glazer and Meeks filed an Answer to Mr. Alexander's appeal asserting that the trial court erred by denying their Motion for Sanctions pursuant to La. C.C.P. art. 863. Thus, that part of the November 2, 2022 judgment referencing Ms. Glazer and Meeks' Motion for Sanctions was the trial court ruling on their motion as ordered by this Court. In fact, prior to denying Ms. Glazer and Meeks' Motion for Sanctions, the November 2, 2022 judgment stated: "**THE COURT**, on remand from the [Louisiana] Fourth Circuit [Court of Appeal], as being directed to make a determination on the following Motions, after considering the relevant pleadings filed, arguments of counsel and Mr. Alexander, issues the following Judgment:". As such, we disagree with Ms. Glazer and Meeks that the November 2, 2022 judgment needs to be amended to remove any reference to a motion for sanctions filed by them.

However, we disagree with the trial court's decision to deny Ms. Glazer and Meeks' Motion for Sanctions. Louisiana Code of Civil Procedure Article 863 provides, in pertinent part:

> B. Pleadings need not be verified or accompanied by affidavit or certificate, except as otherwise provided by law, but the signature of an attorney or party shall constitute a certification by him that he has read the pleading, and that to the best of his knowledge, information, and belief formed after reasonable inquiry, he certifies all of the following:
>
> (1) The pleading is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation.
>
> (2) Each claim, defense, or other legal assertion in the pleading is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law.

49

(3) Each allegation or other factual assertion in the pleading has evidentiary support or, for a specifically identified allegation or factual assertion, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

(4) Each denial in the pleading of a factual assertion is warranted by the evidence or, for a specifically identified denial, is reasonably based on a lack of information or belief.

. . . .

D. If, upon motion of any party or upon its own motion, the court determines that a certification has been made in violation of the provisions of this Article, the court shall impose upon the person who made the certification or the represented party, or both, an appropriate sanction which may include an order to pay to the other party the amount of the reasonable expenses incurred because of the filing of the pleading, including reasonable attorney fees.

As this Court explained in the Opinion rendered in Mr. Alexander's 2019 Appeal, La. C.C.P. art. 863 "imposes a duty of reasonable inquiry on a party—including a *pro se* litigant—signing pleadings." *Alexander*, 2019-0778, p. 18 (La. App. 4 Cir. 4/1/20) 293 So.3d 1243, 1256 (quoting *Mendonca v. Tidewater, Inc.*, 2011-0318, p. 8 (La. App. 4 Cir. 9/7/11), 73 So. 3d 407, 414). In discussing La. C.C.P. art. 863, this Court has also explained the rationale behind the article, as well as factors to consider in determining an appropriate sanction:

> Louisiana law requires all parties to conduct an objectively reasonable inquiry into the factual basis of their allegations prior to signing and filing pleadings with the court. *See* La. C.C.P. art. 863(B); *See also John W. Fisk Co., Div. of Fisk Corp. v. Michel*, [19]97-2105, p. 3 (La. App. 4 Cir. 3/25/98), 709 So.2d 1061, 1063. Violation of this requirement, "shall" result in sanctions. *See* La. C.C.P. art. 863(D). "Subjective good faith will not satisfy the duty of reasonable inquiry." *Loyola v. A Touch of Class Transp. Serv., Inc.*, [19]90-1694 (La. App. 4 Cir. 1991), 580 So.2d 506, 510. The goal to be served by the imposition of sanctions is the "correction of litigation abuse." *Keaty v. Raspanti*, [20]03-1080, p. 5 (La. App. 4 Cir. 2/4/04), 866 So.2d 1045, 1050 (citing *Joyner v. Wear*, 27,631, p. 14 (La. App. 2 Cir. 12/6/95), 665 So.2d 634, 642).

> The trial court "has considerable discretion imposing the type and severity of sanctions." *John W. Fisk Co., Div. of Fisk Corp.*,

[19]97-2105, p. 2, 709 So.2d at 1063. Generally, four factors are considered in determining the appropriate sanctions award: (1) the conduct that is being punished or sought to be deterred, (2) the expenses or costs caused by the violation of article 863, (3) whether the expenses or costs were reasonable as opposed to self-imposed, and (4) whether the sanction is the least severe adequate to serve its purpose. *Keaty*, [20]03-1080, p. 5, 866 So.2d at 1050 (citing *Butler v. Reeder*, [19]98-484, p. 14 (La. App. 5 Cir. 12/29/98), 728 So.2d 888, 895).

*Pierce v. Buck Kriehs Co.*, 2022-0848, pp. 4-5 (La. App. 4 Cir. 7/31/23), 371 So.3d 534, 537-38. On appeal, "[a] trial court's judgment regarding sanctions under La. C.C.P. art. 863 is reviewed under a manifest error/clearly wrong standard." *Id.* at p. 4, 371 So.3d at 537 (citing *Mathis v. Mathis*, 2006-1589, p. 3 (La. App. 4 Cir. 7/25/07), 964 So.2d 426, 428). Thus, an appellate court will not disturb a trial court's judgment regarding sanctions under La. C.C.P. art. 863 "unless the record furnishes no evidence to support the court's finding, or if the finding is clearly wrong." *Id.*

For the reasons listed in the "***Frivolous Appeal***" section of this Opinion, we find La. C.C.P. art. 863 applicable to this situation, and we conclude that the trial court's decision to deny Ms. Glazer and Meeks' Motion for Sanctions was clearly wrong. The record and Mr. Alexander's entire litigation history contain no evidence to support the trial court's finding that sanctions were not appropriate at this juncture. That is, Mr. Alexander's arguments in the matter *sub judice* evidence that he failed to "conduct an objectively reasonable inquiry into the factual basis of [his] allegations prior to signing and filing [his] pleadings with the court[s]." *Pierce*, 2022-0848, p. 4, 371 So.3d at 537. He has already asserted these same arguments twice before the trial court, twice before this Court, and once before the Louisiana Supreme Court. Even after being told by the trial court at the October 27, 2022 hearing that these issues had already been decided by this Court and the

Louisiana Supreme Court, Mr. Alexander nonetheless filed this present appeal. The sanctions provided by La. C.C.P. art. 863 are designed to "correct[] . . . litigation abuse," and Mr. Alexander's repetitive and unfounded filings in the history of this dispute are a clear example to this Court of litigation abuse. *Pierce*, 2022-0848, p. 5, 371 So.3d at 537.

We note that La. C.C.P. art. 863(E) states that "[a] sanction authorized in Paragraph D shall be imposed only after a hearing at which any party or his counsel *may* present any evidence or argument relevant to the issue of imposition of the sanction" (emphasis added). Remand for a contradictory hearing is unnecessary here because, although none of them presented evidence or argument, Ms. Glazer and Meeks and Mr. Alexander all had an opportunity to present evidence and argument at the October 27, 2022 hearing regarding the issue of sanctions. Louisiana Code of Civil Procedure Article 863(E) does not mandate that the hearing had to actually include evidence or argument. Rather, use of the permissive "may" merely indicates that the parties had to have the opportunity to present evidence or argument. Ms. Glazer and Meeks and Mr. Alexander had that opportunity. In particular, during the hearing, Mr. Allgood reminded the trial court that the Board had a pending motion for sanctions, and subsequently the trial court judge explained his thoughts on the issue of sanctions:

> I do not believe at this time, Mr. Alexander's actions are sanctionable. I think he has filed what he believes to be appropriate and truthful. [It is] just -- the [Louisiana] Fourth Circuit [Court of Appeal] has spoken. The [Louisiana] Supreme Court has spoken. The [t]rial [court is] now bound by those. But I do not believe that him seeking redress up until here is a sanctionable offense.

Moreover, the record reveals that the trial court directed the parties on October 20, 2022, to provide a summary of the relevant facts and procedural posture of the case

in advance of contradictory hearing set for October 27, 2022. As previously explained, the issue of Ms. Glazer and Meeks' Motion for Sanctions was remanded to the trial court in this Court's Opinion rendered in Mr. Alexander's 2019 Appeal, and the trial court still had not ruled on it prior to the October 27, 2022 hearing; therefore, the parties should have known that this issue remained unresolved in advance of the October 27, 2022 hearing. Thus, we remand solely for the trial court to determine the amount to which Ms. Glazer and Meeks are owed in terms of La. C.C.P. 863 sanctions.

In sum, we only amend the trial court's November 2, 2022 judgment to properly reflect the fact that Ms. Glazer and Meeks did not have a motion to tax costs before the trial Court on the date of the hearing, October 25, 2022. As amended, we affirm that part of the trial court's November 2, 2022 judgment. Regarding Ms. Glazer and Meeks' Motion for Sanctions, we reverse the trial court's decision to deny their motion and remand this matter to the trial court to determine the amount to which Ms. Glazer and Meeks are entitled under La. C.C.P. art. 863.

**The Board's Request for an Increase in Attorney Fees under La. C.C.P. art. 971**

In its Answer, the Board seeks an increase in its award of attorney fees under La. C.C.P. art. 971. Louisiana Code of Civil Procedure Article 971 is titled "Special motion to strike." It provides, in pertinent part:

> A. (1) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established a probability of success on the claim.

B. In any action subject to Paragraph A of this Article, a prevailing party on a special motion to strike shall be awarded reasonable attorney fees and costs.

. . . .

(1) "Act in furtherance of a person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue" includes but is not limited to:

(a) Any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law.

(b) Any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official body authorized by law.

In the Opinion rendered in Mr. Alexander's 2019 Appeal, this Court held that the trial court had not erred by granting the Board's Special Motion to Strike (as previously explained). In so ruling, this Court also granted the Board's request for an increase in sanctions under La. C.C.P. art. 971(B), explaining that "[a]s the prevailing party on appeal, [the Board] is entitled to an increase in attorney's fees and costs." *Alexander*, 2019-0778, p. 15, 293 So.3d at 1254. In the November 2, 2022 judgment, the trial court ruled:

**IT IS ORDERED, ADJUDGED, AND DECREED** that, pursuant to the [Louisiana] Fourth Circuit[] [Court of Appeal's] finding that [the Board] is entitled to an increase in Article 971 sanctions, . . . [Mr.] Alexander is hereby ordered to pay the sum of . . . Five Hundred Dollars ($500), in addition to the previously awarded sum, representing additional attorney's fees to the [Board].

The "previously awarded sum" referenced above was from the trial court's prior judgment, which stated:

7) [The Board]'s Special 971 Motion to Strike is granted;

8) Mr. Alexander is ordered to pay [the Board] $1,500 for attorney's fees;

We affirm the trial court's award of $500 to the Board in relation to the Special Motion to Strike in addition to the previously awarded $1500. In its Answer to this appeal, the Board asserts that "[r]esponding to this appeal requires the expenditure of additional amounts for attorney's fees for which the Board is entitled to an increased award under La. [C.C.P.] art. 971." We agree with the Board and order Mr. Alexander to pay an additional $500 to the Board under La. C.C.P. art. 971.

In sum, we affirm the trial court's award of $500 to the Board for the Special Motion to Strike in addition to the award of $1500 previously granted by the trial court. We grant the Board's request for an additional award under La. C.C.P. art. 971 in the amount of $500. In total, that is $2500 owed to the Board by Mr. Alexander pertaining to the Board's Special Motion to Strike.

### *In Forma Pauperis* Status

***Duty of Continuous Scrutiny***

We observe that part of the reason Mr. Alexander has been able to continue filing his numerous lawsuits, appeals, and writ applications is because he has *in forma pauperis* status. Louisiana Code of Civil Procedure Article 5183 provides:

> A. A person who wishes to exercise the privilege granted in this Chapter shall apply to the court for permission to do so in his first pleading, or in an ex parte written motion if requested later, to which the applicant shall annex the following:
>
> (1) The applicant's affidavit that the applicant is unable to pay the costs of court in advance, or as they accrue, or to furnish security therefor, because of the applicant's poverty and lack of means, accompanied by any supporting documentation.
>
> (2) The affidavit of a third person other than the applicant's attorney that he knows the applicant, knows the applicant's financial condition, and believes that the applicant is unable to pay the costs of court in advance, or as they accrue, or to furnish security therefor.
>
> . . . .

B. (1) Upon the filing of the completed application and supporting affidavits, the court shall render an order that does one of the following:

(a) Grants the application and allows the applicant to litigate or to continue the litigation without paying the costs in advance.

(b) Denies the application with written reasons for such denial.

(c) Sets the matter for a contradictory hearing.

(2) The submission by the applicant of supporting documentation that the applicant is receiving public assistance benefits or that the applicant's income is less than or equal to one hundred twenty-five percent of the federal poverty level shall create a rebuttable presumption that the applicant is entitled to the privilege granted in this Chapter. If the court finds that the presumption has been rebutted, it shall provide written reasons for its finding.

(3) The court may reconsider its original order granting the application on its own motion at any time in a contradictory hearing.

In interpreting La. C.C.P. art. 5183, the Louisiana Second Circuit Court of Appeal has held that "[n]otwithstanding the liberal construction of codal provisions authorizing indigents to sue *in forma pauperis*, trial courts have the authority, *as well as the duty*, of continuous scrutiny to prevent abuse of this privilege." *McCoy v. State ex rel. Jones*, 39,323, pp. 3-4 (La. App. 2 Cir. 2/17/05), 901 So.2d 1109, 1112 (second emphasis added). Thus, "[a] court may subject the indigent litigant to continuous scrutiny to prevent abuse of the privilege." *Id.* (citing *Smith v. Smith*, 543 So.2d 608 (La. App. 2d Cir. 1989)). The trial court's authority and duty of scrutinizing a litigant's *in forma pauperis* status "is subject only to the requirement of due process, namely that an evidentiary hearing is required when rescission . . . depends upon contested factual issues." *Id.* (citing *T & S Feed Co., Inc. v. Meaux*, 339 So.2d 421 (La. App. 1st Cir. 1976)). This notion of the trial court's duty to monitor a litigant's *in forma pauperis* status is reinforced by La. C.C.P. art. 5182, which is titled "Restrictions on privilege," and provides:

> The privilege granted by this Chapter shall be restricted to litigants who are clearly entitled to it, with due regard to the nature of the proceeding, the court costs which otherwise would have to be paid, and the ability of the litigant to pay them or to furnish security therefor, *so that the fomentation of litigation by an indiscriminate resort thereto may be discouraged*, without depriving a litigant of its benefits if he is entitled thereto.

(Emphasis added.) Our concern is that, heretofore, Mr. Alexander has demonstrated such a "fomentation of litigation by an indiscriminate resort thereto" as evidenced by our above list of Mr. Alexander's related lawsuits. In light of the foregoing, we remand this matter to the trial court with instructions to exercise its duty by holding a contradictory hearing on the issue of Mr. Alexander's *in forma pauperis* status to ensure that Mr. Alexander does not continue to abuse this privilege in the future.

### *Enforcement*

We also note that Mr. Alexander's *in forma pauperis* status allowed him to proceed without paying costs up to this point, but it did not relieve him of his obligation to eventually pay costs if he lost this suit, which he did. Louisiana Code of Civil Procedure Article 5188 states that "if judgment is rendered against a party who has been permitted to litigate without the payment of costs, he shall be condemned to pay the costs incurred by him, in accordance with the provisions of Article 5186, and those recoverable by the adverse party." As referenced therein, La. C.C.P. art. 5186 provides:

> An account shall be kept of all costs incurred by a party who has been permitted to litigate without the payment of costs, by the public officers to whom these costs would be payable. . . . If judgment is rendered against the indigent plaintiff and he is condemned to pay court costs, an affidavit of the account by an officer to whom costs are due, recorded in the mortgage records, shall have the effect of a judgment for the payment due.

Additionally, the trial court's "Appendix 8.0. (Rule 8.0) In Forma Pauperis Affidavit" explains: "Although you may be granted the privilege of proceeding without prepayment of costs, **SHOULD JUDGMENT BE RENDERED AGAINST YOU, YOUR STATUS AS A PAUPER DOES NOT RELIEVE YOU OF THE OBLIGATION TO PAY THESE COSTS.**"

Now, judgment has been rendered against Mr. Alexander multiple times (i.e., the May 2019 and November 2022 trial court judgments, as well as this Court's judgment from Mr. Alexander's 2019 Appeal and this judgment from his present appeal); but the record before this Court does not evidence that the procedure provided in La. C.C.P. arts. 5186 and 5188 and the trial court's "Appendix 8.0. (Rule 8.0) In Forma Pauperis Affidavit" has been enacted yet by the trial court. Accordingly, we remand this matter with instructions to the trial court to request that the Clerk of Court for Orleans Parish Civil District Court provide an affidavit of account for the costs and fees due and to record this in the mortgage records.

Similarly, we direct the Clerk of this Court to provide an affidavit of account for the costs and fees due in conjunction with this appeal and with Mr. Alexander's 2019 Appeal, and we direct our Clerk to record same in the mortgage records.

## DECREE

For the foregoing reasons, we:

- Affirm the sustaining of Appellees' Unauthorized Use of a Summary Proceeding;

- Affirm the denial as moot of the exception of no cause of action filed by Mr. Englade and Mr. Wallace, Ms. Kovac, the Board, and Ms. Glazer and Meeks;

- Affirm the denial as moot of the exception of peremption filed by Mr. Englade and Mr. Wallace, Ms. Kovac, and Ms. Glazer and Meeks;

58

- Reverse the trial court's denial of the requests for attorney fees as found in Mr. Englade and Mr. Wallace's "Exceptions of Peremption, No Cause of Action, and Unauthorized Use of a Summary Proceeding and Request for Award of Attorney Fees;" in Ms. Kovac's "Exception of Peremption, Exception of No Cause of Action, Exception of Unauthorized Use of Summary Proceeding, and Motion for Attorney Fees in Response to Plaintiff's Motion for Annulment of Judgments on the Grounds of Fraud on the Court;" the Board's "Peremptory Exception . . . Pleading the Objections of No Cause of Action, Prescription, and Res Judicata, Combined with Dilatory Exception Pleading the Objection of Unauthorized Use of Summary Proceeding and with Motion for Attorney's Fees under [La. C.C.P.] art. 2004;" and Ms. Glazer and Meeks' "Motion to Adopt Defendants' Responses to Plaintiff's Motion for Annulment of Judgments on the Grounds of Fraud on the Court and Request for Costs and Attorney Fees;"

- Reverse the trial court's denial of Ms. Glazer and Meeks' request for costs as found in their "Motion to Adopt Defendants' Responses to Plaintiff's Motion for Annulment of Judgments on the Grounds of Fraud on the Court and Request for Costs and Attorney Fees;"

- Award costs to Mr. Englade and Mr. Wallace for their "Exceptions of Peremption, No Cause of Action, and Unauthorized Use of a Summary Proceeding and Request for Award of Attorney Fees;" to Ms. Kovac for her "Exception of Peremption, Exception of No Cause of Action, Exception of Unauthorized Use of Summary Proceeding, and Motion for Attorney Fees in Response to Plaintiff's Motion for Annulment of Judgments on the Grounds of Fraud on the Court;" and to the Board for its "Peremptory Exception . . . Pleading the Objections of No Cause of Action, Prescription, and Res Judicata, Combined with Dilatory Exception Pleading the Objection of Unauthorized Use of Summary Proceeding and with Motion for Attorney's Fees under [La. C.C.P.] art. 2004";

- Remand this matter to the trial court for a determination of the amount of the trial court costs and attorney fees owed to Mr. Englade and Mr. Wallace, Ms. Kovac, the Board, and Ms. Glazer and Meeks for those respective exceptions and motion filed in response to Mr. Alexander's Motion for Annulment, specifically Mr. Englade and Mr. Wallace's "Exceptions of Peremption, No Cause of Action, and Unauthorized Use of a Summary Proceeding and Request for Award of Attorney Fees;" Ms. Kovac's "Exception of Peremption, Exception of No Cause of Action, Exception of Unauthorized Use of Summary Proceeding, and Motion for Attorney Fees in Response to Plaintiff's Motion for Annulment of Judgments on the Grounds of Fraud on the Court;" the Board's "Peremptory Exception . . . Pleading the Objections of No Cause of Action, Prescription, and Res Judicata,

Combined with Dilatory Exception Pleading the Objection of Unauthorized Use of Summary Proceeding and with Motion for Attorney's Fees under [La. C.C.P.] art. 2004;" and Ms. Glazer and Meeks' "Motion to Adopt Defendants' Responses to Plaintiff's Motion for Annulment of Judgments on the Grounds of Fraud on the Court and Request for Costs and Attorney Fees";

- Affirm that Mr. Alexander's Motion for Annulment is moot pursuant to the granting of Appellees' Exception of Unauthorized Use of a Summary Proceeding;

- Affirm the sustaining of the Board's and Ms. Glazer and Meeks' exception of res judicata and apply res judicata to Mr. Alexander's claims against Mr. Englade and Mr. Wallace and Ms. Kovac too;

- Affirm the dismissal with prejudice of Mr. Alexander's Petition for Absolute Nullity;

- Affirm the denial of Mr. Alexander's Motion to Disqualify;

- Affirm the finding that Mr. Englade and Mr. Wallace's, the Board's, Ms. Glazer and Meeks' pleadings filed in response to Mr. Alexander's Motion to Disqualify were rendered moot by the denial of the Motion to Disqualify;

- Reversal the trial court's denial of Ms. Glazer and Meeks' request for costs and attorney fees associated with their opposition to Mr. Alexander's Motion to Disqualify;

- Award costs and attorney fees to Mr. Englade and Mr. Wallace and the Board for their oppositions to Mr. Alexander's Motion to Disqualify.

- Remand to the trial court for a determination of the costs and attorney fees owed to Ms. Glazer and Meeks, Mr. Englade and Mr. Wallace, and the Board for their oppositions to Mr. Alexander's Motion to Disqualify;

- Reverse the denial of Mr. Englade and Mr. Wallace's Motion to Tax Costs;

- Remand for a determination as to how much Mr. Englade and Mr. Wallace are owed in light of our decision to grant their Re-Urged Motion to Tax Costs;

- Affirm the grant of Ms. Kovac's Motion to Tax Costs and award of $75.00 for same;

- Affirm the grant of the Board's Motion to Tax Costs and award of $525 for same;

- Grant all Appellees' requests for frivolous appeals damages;

- Assess all costs of this appeal against Mr. Alexander and instruct the Clerk of this Court to determine same;

- Tax the costs of this appeal and instruct the Clerk of this Court to determine the amount Mr. Alexander owes in light of this ruling;

- Amend the November 2, 2022 judgment to show that Ms. Glazer and Meeks' did not have a pending motion to tax costs at the time of the October 27, 2022 hearing;

- Remand for the opportunity for Ms. Glazer and Meeks to file the appropriate motion to tax costs and rule to show cause per La. C.C.P. art. 1920;

- Deny Ms. Glazer and Meeks' request to amend the judgment to state that they did not have a pending motion for sanctions;

- Reverse the denial of Ms. Glazer and Meeks' Motion for Sanctions;

- Remand for the trial court to determine the amount owed to Ms. Glazer and Meeks in conjunction with their Motion for Sanctions under La. C.C.P .art. 863;

- Affirm the award of $500 to the Board for the Special Motion to Strike in addition to the award of $1500 previously granted by the trial court;

- Grant the Board's request for an additional award under La. C.C.P. art. 971 in the amount of $500;

- Instruct the trial court to fulfill its duty to assess and scrutinize Mr. Alexander's *in forma pauperis* status;

- Instruct the trial court to enforce the *in forma pauperis* code articles and rules by requesting that the Clerk of Court for Orleans Parish Civil District Court provides an affidavit of account for the costs and fees Mr. Alexander owes and records this information in the mortgage records; and

- Instruct the Clerk of this Court to provide an affidavit of account for the costs and fees Mr. Alexander owes for this appeal and his 2019 Appeal and instruct our Clerk to record this information in the mortgage records.

**AFFIRMED IN PART; REVERSED IN PART; JUDGMENT AMENDED IN PART AND AFFIRMED AS AMENDED; REMANDED WITH INSTRUCTIONS**